**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| A. B., a minor child, by and through her Parent and Legal Guardian, SHERRI BLAIK, and SHERRI BLAIK, Individually,<br><br>                    Plaintiffs,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, dba BLUE CROSS BLUE SHIELD OF OKLAHOMA,<br><br>                    Defendant. | Case No: 5:19-cv-968 D |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
**MANSELL ENGEL & COLE**
204 North Robinson, 21st Floor
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
E-mail:  mengel@meclaw.net

**ATTORNEYS FOR PLAINTIFFS**

Dated:  January 16, 2020

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................... 1

Arguments and Authorities ..................................................................................... 2

    Proposition I – Sherri Blaik Does Have Standing To Assert A Claim For
    Bad Faith ........................................................................................................... 2

    Proposition II – The Amended Complaint Pleads Sufficient Facts To State
    A Plausible Claim ............................................................................................. 5

Certificate of Service ........................................................................................... 23

# TABLE OF AUTHORITIES

Cases:

*Anderson ex rel. Anderson v. Am. Int'l Specialty Lines Ins. Co.*,
  2001 OK CIV APP 141, ¶3, 38 P.3d 240, 241 ................................................... 5

*Bell Atl. Corp v. Twombly*,
  550 U.S. 544, 570 (2007) .......................................................... 1, 5, 6, 7, 21, 22

*Christianson v. Park City Mun. Corp*.,
  554 F.3d 1271, 1276 (10th Cir. 2009) ............................................................ 6

*Cutter v. Metro Fugitive Squad*,
  2008 WL 4068188, p. *3 (W.D. Okla. 2008) ................................................. 7

*Gianfillippo v. Northland Casualty Company*,
  993 OK 125, 861 P2d 308 ............................................................................ 4

*Pre-Paid Legal Services, Inc., v. Kane*,
  2008 WL 640351, p. *1 (E.D. Okla. 2008) .................................................... 6

*Ridge at Red Hawk L.L.C. v. Scheider*,
  493 F.3d 1174, 1177 (10th Cir.2007) ............................................................ 6

*Roach v. Atlas Life Insurance Company*,
  1989 OK 27, 769 P2d 158 ............................................................................ 4

*Robbins v. Oklahoma*,
  519 F.3d 1242, 1247 (10th Cir. 2008) ....................................................... 6, 7

*Scheuer v. Rhodes*,
  416 U.S. 232, 236 (1974) .............................................................................. 6

Other authority:

Fed. R. Civ. P. 8(a)(2) .................................................................................... 5

Fed. R. Civ. P. 12 (b)(6) ................................................................................ 6

15 O.S. §29 ....................................................................................................... 5

43 O.S. §209.2 .................................................................................................. 4

## INTRODUCTION

The Defendant's Motion to Dismiss raises one genuine legal issue with regard to Sherri Blaik's standing to assert a claim for bad faith.  The Defendant's contentions in that regard fail because their arguments and authorities are incorrect and misplaced.  For some reason, Defendant addresses Sherri Blaik as a third party to this contract.  Sheri Blaik, as the mother of this minor child, is statutorily responsible for the child's medical necessaries.  Sheri Blaik, and the other parent, Will Blaik, are the persons that purchased this insurance policy, were issued and delivered this insurance policy by the Defendant, have paid all the premiums for this policy and are, otherwise, the persons for which this health insurance contract exists in order to meet their statutory obligation to provide for this child's medical necessaries.  The fact that the child is still eleven years old, alone establishes that she is not the person that maintains this insurance policy or any claims under this insurance policy with the Defendant.  It is simply her personal medical care that is covered under the policy. The insurance company contracts with the parents, even if the contract is for their child's medical care.

The remainder of the Defendant's Motion to Dismiss is a stock *Twombly* motion that, presumably, must have been added simply because the Defendant was filing a Motion to Dismiss anyway.  The legal relief asserted under the *Twombly* authority is completely misplaced in the context of this particular Complaint.  The specificity of Plaintiff's claims in this Complaint are already as complete and detailed as possible.  In fact, any attempt to provide the Defendant a more detailed explanation of these claims would require document discovery from the Plaintiff's insurance company, the

Defendant.  It is only the Defendant, HCSC that could provide any more particulars with respect to what happened for over six months in the handling of these insurance claims. There certainly is not any genuine legal issue with respect to whether or not the nature and plausibility of the claims were set forth clearly.  They were.  For these reasons, the Plaintiffs submit that the Defendant's Motion to Dismiss should be denied.

## ARGUMENTS AND AUTHORITIES

### PROPOSITION I - SHERRI BLAIK DOES HAVE STANDING TO ASSERT A CLAIM FOR BAD FAITH

The Defendant's Motion states, and repeats, that the Complaint contains a single cause of action for bad faith and does not assert a breach of contract claim.  This contention is incorrect.  Paragraph 8 of the Complaint states that the Defendant breached the insurance contract.  Paragraph 9 of the Complaint states that the Defendant breached the implied covenant of good faith and fair dealing.  The Complaint sets forth the damages suffered "as a direct result of Defendant's breach of contract and breach of implied covenant of good faith and fair dealing".  See ¶11 of the Complaint.

Then, the Defendant contends that Sherri Blaik has not stated, "and indeed cannot state", a bad faith claim in her individual capacity under Oklahoma law.  This contention is supported by authority where a third party is not shown to have a sufficient relationship to confer standing to bring such a claim against the insurance company.  These contentions are wholly misplaced.  The Complaint documents that A.B. is an eleven-year-old girl.  See ¶1 of the Complaint.  The Defendant's contract is not with her.  The Complaint also states that Sherri Blaik is her mother.  See ¶1 of the Complaint.  The

2

Complaint states that the BCBS health insurance policy was purchased by A.B's parents specifically for A.B. at the time of her birth. See ¶3 of the Complaint. This parent purchased this BCBS health insurance policy specifically for their eleven-year-old child at the time of her birth. This alone is sufficient under Oklahoma law to confer standing upon the parent to bring bad faith claims against this insurance company. The remainder of the allegations in the Complaint refer to the Plaintiffs collectively with respect to the submission of claims, complying with conditions precedent, such as premium payments, and other actions in connection with the claim. See ¶¶6, 7, 9, 10 and 11. Obviously, these allegations regarding submissions of the claims collectively would be the Mother for her minor child's medical expenses.

The Defendant's cited authorities addressed third parties that were determined to have no contractual relationship at all with the insurance company sufficient to confer standing upon that third party to bring contractual or bad faith claims against the insurance company. In this case, the parents are the persons with whom BCBS has contracted – the only persons that have a direct contractual relationship with BCBS. Obviously, this insurance policy contract cannot be formed with a newborn, any more than it could exist with an eleven-year-old. The fact that the policy was established to cover the medical expenses of these parents' minor child does not change the fact that BCBS is contracted with these parents, and only these parents, in this insurance policy contract. The fact that Sheri Blaik is the parent and that she purchased this insurance for her minor child unquestionably confer standing upon her. See ¶¶1 and 3 of the Complaint. Obviously, as alleged, this parent is the person that submitted the claims and

3

took the other actions described in the Complaint to and get BCBS to honor their contract with her.  See, Complaint, for example, at ¶¶6, 7, 9, 10 and 11.  BCBS does not and cannot claim that they did not contract directly with Sherri Blaik when she and her husband purchased this insurance policy from them.

In the presence of a contractual or statutory relationship between the insurer and the party asserting the bad faith claim, the insurers duty of good faith arises.  *Roach v. Atlas Life Insurance Company*, 1989 OK 27, 769 P2d 158.  "The insureds reason for purchasing the insurance policy determines if the required contractual relationship exists, not the entitlement to payment of insurance proceeds".  *Gianfillippo v. Northland Casualty Company*, 993 OK 125, 861 P2d 308.  Here, Sherri Blaik's purpose for purchasing the insurance policy for her minor child is beyond question.  Parents and guardians are liable for the incurred medical obligations of the minors in their charge.  *See, e.g.,* 43 O.S. §209.2.  Sherri Blaik, and her husband Will, purchased the health insurance policy from Blue Cross Blue Shield to indemnify them for the cost of covered medical care that their daughter received.  These parents directly entered into the insurance policy contract with Blue Cross Blue Shield and paid premiums for the relevant coverages.  Oklahoma law imposes upon this Defendant the duty of good faith and fair dealing as to these parents because they are the persons, the only persons, that contracted with BCBS for this insurance policy.  To fail to recognize Blue Cross Blue Shield's duty to these parents for Sherri Blaik's cause of action for BCBS's breach of that duty "would negate a substantial reason for the insured's purchase of the policy—the peace of mind and security which it provides in the event of loss"  *Roach*, *supra*.

These parents are indisputably the first party insureds covered by this contract with BCBS.  Indeed, there is no other conceivable person with whom BCBS can contend that they contracted with in issuing this policy.  For that reason alone, the Defendant's contention with regard to Sherri Blaik's standing fails.  In fact, Oklahoma law would extend standing for these claims of bad faith much further to even third-party beneficiaries.  Contract law expressly states that a third-party beneficiary to a contract has standing to sue for its enforcement. 15 O.S. §29. In Oklahoma, a third-party beneficiary to an insurance contract has standing to enforce the policy as well as sue for tort damages. *Anderson ex rel. Anderson v. Am. Int'l Specialty Lines Ins. Co*., 2001 OK CIV APP 141, ¶3, 38 P.3d 240, 241. The primary intent of the parties, as reflected in the policy, is the key consideration in determining standing. *Id.* The insurer's duty to act in good faith extends to certain third-party beneficiaries. *Id.*  A.B. is a named insured and also an intended beneficiary.  Defendant's arguments and authorities regarding third parties without any sufficient contractual or statutory relationship with the insurance company are wholly misplaced in the context of this lawsuit.  For that reason, The Defendant's Motion to Dismiss should be denied.

### PROPOSITION II - THE AMENDED COMPLAINT PLEADS SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM

This Amended Complaint contains considerable detail identifying very specifically the facts involved in Plaintiffs' claims.  Under Fed. R. Civ. P. 8(a)(2) a party asserting a claim must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Heightened fact pleading of specifics is not required.  *Bell*

5

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("we do not require heightened fact pleading of specifics").

When a Complaint is challenged by a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "the Court is required to take all factual allegations of [the Complaint] as true and to draw all reasonable inferences in [Plaintiffs'] favor." *Pre-Paid Legal Services, Inc. v. Kane*, 2008 WL 640351, p. *1 (E.D. Okla. 2008) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Ridge at Red Hawk L.L.C. v. Scheider*, 493 F.3d 1174, 1177 (10th Cir.2007)). The inquiry is whether the Complaint contains enough facts to state a claim to relief that is plausible on its face. *Scheider*, 493 F.3d at 1177. "[T]the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.* The issue in reviewing the sufficiency of plaintiffs' claims is not whether they will prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer* 416 U.S. at 236. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).[1] *See also*, *Christianson v. Park City*

---

[1] "'[P]lausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins,* 519 F.3d at 1247 (quoting *Twombly*, 12 7 S.Ct. at 1974). The purpose of *Twombly's* "plausibility" requirement is to "weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, [and] also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context . . . . . [and] the type of case." *Id.* For example, "[a] simple negligence action may require significantly less allegations to state a claim under Rule 8 than a case alleging anti-trust

*Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009) ("Even after *Twombly*, the [Complaint's] factual allegations need only contain enough allegations of fact 'to state a claim to relief that is plausible on its face'") (citing *Twombly*, 127 S.Ct. at 1974).

The Blaiks' Amended Complaint meets, and far exceeds, the *Twombly* standard. The Defendant initially complains that the Amended Complaint does not identify an individual claim or for what particular ABA therapy services or other individualized details for different ABA therapy claims.  This is because Plaintiffs' claims in this lawsuit apply to <u>all</u> of her ABA therapy claims from April of 2019 to the present (the filing of the Complaint).  See, ¶7 of the Complaint.  The entire factual basis for this litigation is that the Defendant wholly refused to respond, address, handle, or even properly acknowledge **any** of her ABA claims altogether until the time of the filing of this lawsuit.  There is no factual distinction between which type of ABA therapy services or any induvial claim.  As the Defendant well knows, they refused to provide any payment, denial, explanation or reasonable response of any kind for any of this child's ABA therapy claims and that is what is specifically alleged in the Amended Complaint. The Complaint specifically states that the claims "were all unreasonably delayed without any justifiable basis for the same".  See ¶7 of the Complaint.  The facts involved in this Complaint are that "the Defendant wholly ignored and refused to respond to the Plaintiffs' requests for some reasonable response or handling of these claims".  See ¶7 of the Complaint.  The very essence of these claims is that the Plaintiff was unable to

---

violations (as in *Twombly*) or constitutional violations (as in *Robbins*)." *Cutter v. Metro Fugitive Squad*, 2008 WL 4068188, p. * 3 (W.D. Okla. 2008).

ascertain or ever garner any understanding as to what the Defendant was doing with these claims or anything with regard to the handling of these claims because the Plaintiffs still do not understand and know these details.  The Defendant refused to respond at all, to provide any such detail and only the Defendant knows what happened to cause these unreasonable, unjustifiable delays in the handling of all of this child's ABA claims.  The Defendant refused to even provide a response of any kind on any of this child's ABA therapy claims and now complains that our complaint does not differentiate among them. The Complaint, as factually stated, makes no such differentiation, because there was none.  Plaintiffs' could not compel a response from Blue Cross at all on any of her ABA claims for over six months.

The child's ABA therapy claims have all come from the same ABA provider for years.  The Defendant, BCBS, had never paid anything for any ABA therapy for this child since her birth, despite a federal Court Order finding coverage for these services. Her claims were resolved up through the resolution of the previous litigation in April 2019 and, after the conclusion of that litigation, the Plaintiffs were wholly unable to get any indication from the Defendant or response of any kind as to whether or not there would be any coverage at all provided for any of her ABA services.  In fact, given the facts, as plead, that led to this litigation, it is truly ironic that the Defendant would look for detail pertinent to any particular individual ABA therapy claim.  That is exactly what the Plaintiff had been demanding for months and could not obtain.  The Defendant's actions complained of in this litigation were uniform, across the board, on all of this child's ABA therapy claims as recited in the Complaint.

8

Similarly, the Defendant complains about the lack of specification on policy provisions when it was the Defendant that would not process the claims and provide any response at all.  The Complaint alleges that this Court entered an Order in February 2018 in previous litigation that this child's ABA therapy was covered by her insurance policy with the Defendant.  See, ¶7.  The parties briefed these policy provisions at length and it is difficult to imagine a factual scenario where the Defendant could possibly be more aware of the exact coverage provisions asserted by the Plaintiffs for coverage, as specifically alleged in this Amended Complaint.  The Court found coverage in a written Order.  The Complaint states that BCBS had continued to refuse to make any payment of any kind to affirm any coverage for this child's continuous ABA therapy since that time (the February 2018 Order) at least up until October 2019.  See, Amended Complaint, ¶7. The Complaint explains that following the resolution of the previous litigation in April, Plaintiffs continually submitted billings and requests for coverage to BCBS for the child's continuous ABA therapy from April 2019 to the present.  The claims asserted by Plaintiffs are specifically restricted to only her ABA claims – all of them since April 2019 to the present.  The Amended Complaint then clarifies that Defendant's only position remain that there was no coverage for her ABA treatment and Defendant would not affirm whether it would or would not cover the expenses.  See, Amended Complaint. The Complaint is not specific to any specific ABA service or any specific claim or claim denial because these claims were not processed or handled at all.  The Complaint does not specify between individual claims because the factual complaints are across the board, as were the Defendant's actions in wholly refusing to respond or address any of

9

them.  The Defendant's complaints and attempts to differentiate are simply misplaced in light of the specific facts that serve as the plausible stated claim from these Plaintiffs.  In effect, the Defendant is asking for differentiation which does not exist in the facts that are specifically pled in this Complaint.

Before reviewing the further specific details of the allegations in the Complaint, Plaintiff would show the Court the actual communications and the very bare information available to the Plaintiffs which served as the basis for the filing of this lawsuit.  Indeed, Plaintiff could not explain any differentiation in these claims because they could obtain no information from their insurance company.  That is the point.  After review of the only scant information available from the insurance company, the nature and detail of the Complaint's allegations are verified.  The totality of these communications are attached as Ex. 1.

By late June, it was already over two months since the post claim April ABA treatments that should have already been paid by the insurance company.  Of course, Mrs. Blaik only knew that BCBS had never paid for any ABA claims for A.B., even after an Order from this Court in 2018.  She was also aware that her insurance company had contended to the end of litigation that there was no policy coverage for ABA claims in more recent years, even if there was coverage for those claims in 2011.  Meanwhile, the BCBS health insurance policy, in accordance with state law, had a policy provision entitled "Benefit Determinations for Properly Filed Claims".  "Once the Plan receives a properly filed claim from you or your Provider, a Benefit determination will be made within 30 days.  This period may be extended one time for up to 15 additional days, if the

Plan determines that additional time is necessary due to matters beyond our control". Obviously, there had been no word from the insurance company past the time provided in the policy and the health insurance statutes.  The Plaintiff had no way to know whether or not her insurance company was going to continue to refute any coverage for her child's ABA therapy.

Mrs. Blaik had been unable to get any response as to why the ABA therapy provider's claims had not been responded in any fashion to comply with the policy's provisions.  Mr. Engel sent the following June 27, 2019 letter to Douglas Sondgeroth at HCSC – the representative that had been designated by HCSC for contact and notice in the event of any possible further litigation from the Blaiks.   He stated: "Over the last several years, I represented Will and Sherri Blaik's daughter, Allison Blaik, in connection with Blue Cross and Blue Shield's denial of her ABA therapy claims.  You were listed as the person we would notify in the event of problems with future claims.  Allison's ABA therapy provider, Therapy and Beyond, indicates that they have submitted for Allison's treatment beginning on April 22, 2019 and have not received any response from Blue Cross and Blue Shield.  On page 60 of the policy it indicates that a benefit determination will be made within 30 days.  It is now been over 60 days and they have not received any response on these claims.  These are the first claims submitted after the resolution of the lawsuit and this is cause for much concern with the Blaiks.  Please check on the processing of these claims and give me a status update.  I believe the policy number for Allison Blaik's Health Check Select policy is Group No. Y09HS3, Subscriber no. 897000403.  Thank you for your review and response."

On Wednesday, July 3, 2019, Mark Engel received a response from Mr. Sondgeroth that stated: "I received your letter below on Monday and I am looking into this. I appreciate you reaching out and I will confirm the status as soon as I have more information and give a timetable on these claim". The Blaiks never received such a timetable on these claims, nor any substantive response.

On July 10, 2019, Mr. Sondgeroth sent his second and final email to Mark Engel that stated: "I am writing to follow-up on the earlier correspondence last week related to the claims for Ms. Blaik. I have discussed it with my client and it is my understanding that the claims you referenced in your letter are still pending because additional clinical information from Ms. Blaik's medical providers is needed to evaluate the services and the claims under the terms of the policy. I understand that a letter identifying that information for not only the claims in your letter but also other recent claims was sent to the provider earlier this week. I believe that once the provider supplies that additional information, BCBSOK will be in position to evaluate the claims promptly. I appreciate your correspondence and reaching out to me on this matter, as well as your patience. I think that all of us want to make sure that the claims are appropriately and fully considered, and I think that with the additional information from the provider, that will be able to happen. Please let me know if you have additional questions or, if after the claims are reviewed, there are additional items to discuss." There had been no additional information requested from Mrs. Blaik's medical providers. Note that even the insurance company refers to it as Ms. Blaik's medical providers, although they are providing the medical services for her child. The reality of the insurance contract that the Defendant

seeks to avoid in this Motion to Dismiss is not lost on the representatives of Blue Cross
Blue Shield actually involved in these claims.    There was no letter identifying any
information needed for the claim, nor even any acknowledgment of recent claims, nor
any action on these claims within the time limits prescribed in the policy's provisions, as
required by Oklahoma law.   Nothing had been sent to Mrs. Blaik until these responses
from Mr. Sondgeroth.  That was to be the last response of any kind from BCBS.

      All of these emails are attached to this response as Ex. 1.   On July 23, 2019 Mr.
Engel sent an email to Doug Sondgeroth that said "Dear Doug, There are specific time
requirements for the proper processing of health insurance claims.   This is required for
the health and safety of the patients.   Some of these claims are from April or May.  Not
properly and promptly paying medical claims can affect treatment decisions.    If
information is needed, then someone needs to be on the phone getting it
immediately.   BCBS has never paid for this child's ABA therapy, even after an Order
finding coverage from a federal judge.  This is no ordinary delay on just another claim,
but a matter of these people not knowing whether coverage is going to be honored at all -
again.   The continued delay could affect decisions for this girl's treatment.   The parents
are asking me what they are supposed to do.  The delay at this time is, in fact, a denial of
proper payment of the policy benefits.  How long is it supposed to take for BCBS to
simply tell us that they intend to or do not intend to start paying for her ABA therapy?
This is the 90-day written notice required by the settlement agreement for the filing of
suit.    Surely, it will be resolved by that time, but I could not wait any longer to post the
notice.  If these claims remain unpaid after 90 days from now, then suit will be

13

filed.  Hilda, please docket the 90 days.   Thank you for your immediate attention to paying these claims."  It had been another month without BCBS giving any responsive information despite their obvious failure to comply with their own policy terms.  The very next day, on July 24, 2019, Mark Engel told Mr. Sondgeroth "Therapy and Beyond never received any request since your July email and is unaware of BCBS needing anything.  Mr. and Mrs. Blaik have not been copied on any requests for any information.  What information could they possibly need?  Now that I reread your email, it is very nebulous about "additional clinical information".  BCBS has thousands of pages of medical documentation and doctor testimony as to this child's clinical information.   They are either going to pay for her ABA therapy or they are not.  What is the problem?"  There was never going to be another response of any kind from BCBS in order to address these claims.

Not only was BCBS going to refuse to identify what information that they supposedly needed from the provider, nor where they going to try to communicate with their insured in any arguable good faith manner whatsoever.   Instead, these very reasonable requests for some type of determination in accordance with the law and the policy were going to be intentionally ignored.  Although we do not know yet who made the decision and why, it is very apparent that someone made an intentional decision for BCBS to simply refuse to respond in any fashion any further on these long overdue determinations.   They were BCBS and the Blaiks were not.   BCBS did not have to respond in any reasonable, good faith fashion whatsoever.  This is not an administrative mistake, but an intentional decision to not respond.

14

Throughout August the Blaik's repeatedly queried as to what they were supposed to tell the ABA providers and there was no answer.  It started occurring to the Blaiks that BCBS may have already decided that they were not going to pay for any of A.B's ABA therapy claims based upon the same arguments they asserted previously.  It was certainly apparent that they had no intention to simply respond as to whether or not there would ever be any such coverage in any form.  Mrs. Blaik inquired as to what she was supposed to communicate to the ABA therapist at Therapy and Beyond, but there was simply no information that could be garnered from the Defendant.  She could not tell the medical providers anything because she was unable to make BCBS tell her anything.  Mrs. Blaik finally reconciled that she was going to have to pay for the needed therapy until BCBS honored her with a response.  She braced herself for more litigation.

On August 21, 2019, Mark Engel wrote Doug Sondgeroth again.  "It has now been many weeks since I brought this problem to your attention.  You were the designated representative to avoid such mishandling.   BCBS is either going to start paying for this child's ABA therapy or they are not.  It is not that difficult.  How can your client possibly justify simply ignoring the time requirements for responding to these claims?  Now, we have one isolated EOB with a denial (and the standard BCBS lack of any real explanation for the denial) and still no response to all the claims that are months old.  Are they intentionally trying to inflict pain and worry on this family?  They cannot believe the complete refusal to provide a response at all.  I certainly cannot give them any rational basis for it, unless someone has decided intentionally to persecute them.  Is this retribution for them having sued BCBS earlier?   If BCBS is not paying, just say so and

the family can brace themselves for more litigation. If they are paying, how can it possibly take this long and what purpose is being served? My client writes me incessantly because she deals with these providers and this problem daily. Why can't they have the courtesy of an answer? She cannot believe the company can just brazenly keep ignoring these claims and not respond at all. She wants me to tell her what to tell these ABA therapists. All I can say is it is unbelievable and unexplainable. What should we tell them? How many more months does BCBS intend to take on these claims? Why do they not have to comply with the law? What is going on?" The random EOB that had been received in August is attached hereto as Ex. 2. It simply says they haven't paid it due to "This expense/service is not covered under the terms of your Health Care Plan." Again, it appeared to be a routine billing for a single item that slipped through the cracks and, certainly, did not address the multiple daily claims that had been ignored and intentionally left without any response at all. It did cause Plaintiff to believe, for the first time, that BCBS was embarking upon a course to deny any ABA treatment whatsoever for A.B. pursuant to their earlier arguments prior to 2019. The August 21st inquiry to BCBS received the same response as the inquiries a month earlier – none.

Oklahoma statutes require a response from an insurance company within 30 days to any written communication. 36 O.S. §1250.4(c). This requirement of Oklahoma law was being intentionally ignored for some yet unascertainable reason and purpose. Mr. Sondgeroth simply refused to respond to any further emails at all. No one wrote anything to the insured about these long overdue claims. Mrs. Blaik addressed as to whether she could at least inform her health care providers that suit would be pursued to ensure their

payment at the expiration of the 90 days and she informed them of the same.  Mrs. Blaik began to look at the policy language in her most current policy and, then, the authority concerning the previous arguments from the Defendant that ABA therapy was not covered by the policy anticipating a complete denial of all the claims.  She reviewed the earlier briefings from the insurance company asserting that there was no coverage for ABA treatment for her child in more recent years.  She requested a copy of the current BCBS policy on September 6, 2019.  Throughout September of 2019, there was still no response of any kind from BCBS on any of the pending claims or of BCBS's overall intention with respect to honoring the same.  No claims were paid or denied or addressed in any fashion.  There was no distinction with regard to the type of ABA therapy service, nor any particular date, nor any particular claim as addressed in Defendant's Motion to Dismiss.  They simply continued in their blanket refusal to address Mrs. Blaik's claims or to respond to them or her multiple inquires in any fashion.  On October 22, 2019, literally the 89th day after Plaintiffs' notice to file suit, Mrs. Blaik received a stack of EOBs.  The EOBs made payment on a number of bills at about 35% of what was billed, which was significantly less than the 55% that Therapy and Beyond indicated was covered in the past.  Mrs. Blaik had no way to determine if all of her providers bills had been addressed at all or what was involved in their handling because her insurance company had refused to respond to her in any fashion for six months.  Some of the EOBs indicated that some of the ABA services were being denied.  The suit was filed on October 24th, two days later, and the Plaintiff had no additional information pertinent to what occurred.  To be clear, as specifically alleged in the Blaik's Amended Complaint, the Blaiks make no

17

distinction on any of these claims and bring this action for the unjustified delay in bad faith claims handling on all of these claims, exactly as set forth in the Complaint. Delay alone can be the plausible basis for a bad faith claim in Oklahoma. Indeed, failure to promptly pay subverts the very peace of mind for which insurance is carried. Oklahoma's landmark decision of *Christian v. American Home Assur. Co.*, recognizing the cause of action in Oklahoma was based solely on the unjustifiable delay. Indeed, the claim had already been paid. *Christian v. American Home Assur. Co.*, 1977 OK 141, 577 P.2d 899. The Supreme Court recognized that "a substantial part of the right to receive the policy benefits promptly. Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy." *Id*.

Although BCBS still refused to provide Mrs. Blaik any additional information or response of any kind whatsoever with respect to what had happened with her claims or continued coverage, she was able to get some information from the providers themselves. The providers indicated that they were receiving some payments just on the temporary authorization and that Defendant was providing them another two weeks on the temporary authorization. BCBS had told the providers that they were seeking review from another BCBS doctor as to whether they should allow any further coverage after that two weeks. None of this was conveyed to Mrs. Blaik by Defendant. Although BCBS had failed to convey any appropriate information to their insured in accordance with the policy or the law or any obligation of good faith and fair dealing, the bottom line was that they still threatened to withdraw the authorization altogether and had refused to provide any justifiable explanation of their handling over the last six months on any of

her claims – all of her claims.  See the Amended Complaint.  On the 89th day of her notice to file suit, she had received a stack of EOBs, no appropriate information or response from BCBS as to her written inquires and a threat of imminent termination that was relayed to her second-hand on some type of undisclosed temporary authorization. BCBS was still not responding to her. The lawsuit that was already drafted was filed on October 24, 2019.  That is what happened.  BCBS is well aware of what happened, why they were sued, and are, in fact, the only ones that know any further detail as to what happened for over six months in the handling of these claims.  Mrs. Blaik cannot possibly detail the further facts underlying her claims against the Defendant because the Defendant steadfastly refused to provide her any response or information at all as to what did happen with these claims.

The Amended Complaint states that following the resolution of the previous litigation in April 2019, the Plaintiffs continually submitted billings for this ABA therapy from April 2019 to the present and that BCBS had continued to refuse to make any payment of any kind or to affirm any coverage for this child's continuous ABA therapy since that time, at least up until October 2019.  See, Amended Complaint, ¶7.  The Complaint factually explains this claim in considerable detail.  The Amended Complaint states that throughout the summer months, the Plaintiffs pleaded with Blue Cross and Blue Shield to simply advise in any fashion as to whether or not they intended to provide coverage and payment for the child's ABA therapy treatment.  See the Amended Complaint, ¶7.  The Complaint alleges that the Plaintiffs confronted the Defendant with the requirements of Oklahoma law for prompt payment and handling of health insurance

19

claims and that the Plaintiffs pleaded with the Defendant for some reasonable response to determine whether or not there was going to be any coverage or any answer at all with respect to her ongoing ABA therapy claims.  See the Amended Complaint, ¶7.   Plaintiffs alleged that the Defendant wholly ignored and refused to respond to the Plaintiffs' requests for some reasonable response or handling of these claims. See the Amended Complaint, ¶7.   The Complaint notes specifically that the same week was the first time that BCBS had made some partial payments on some of these claims for some of these ABA services and that it was the first time they had provided any payment on any ABA treatment for this child.  The Complaint very specifically specified that these claims that were finally paid and denied in October 2019, were **all** unreasonably delayed without any justifiable basis for the same. As specified in the Amended Complaint, Plaintiffs allege that the Defendant's refusal to respond to the Plaintiffs on these claims was with knowledge that it could affect the decisions for treatment of the child and with the intent that it would coerce recommendations from her providers for a lower standard of care and to coerce decisions to reduce her care.  These allegations must be taken as true, will be proven, and certainly establish a plausible claim for breach of contract and bad faith. After a six-month, unjustifiable delay **on all of these claims**, the delay alone can support a plausible claim for bad faith.

The Amended Complaint specifically states that authorizations for continued ABA treatment were not forthcoming from Defendant at all, have now been delayed until the last minute, and are threatened to be discontinued altogether.  See, Amended Complaint ¶7.  The Amended Complaint states that the Defendant breached the insurance contract

20

by delaying, failing and refusing to properly and promptly approve and pay policy benefits to the Plaintiffs.  See, ¶8 of the Amended Complaint.  As with any complaint, this complaint contains standard pleading that relates to the elements and legal requirements involved in these claims.  However, this Complaint also specifies that the Defendant acted in bad faith by unreasonably delaying the payment of policy benefits, including delays and refusals to pay with the specific intent to interfere with and prevent necessary medical care for A.B. in order to reduce the applicable policy benefits that would otherwise be payable for such care.  See, Amended Complaint at ¶9 (o).  The Amended Complaint also alleges that the Defendant breached the implied covenant of good faith and fair dealing in the handling of the Plaintiffs claims by attempting to force a lessened level of care for A.B. in order to minimize the policy benefits payable under her policy.  See, Amended Complaint at ¶9 (p).  These are not only facts that would plausibly support Plaintiffs' bad faith claim but is really the only rational reason why BCBS would refuse the Blaiks any response at all.

Notably, as noted in the Defendant's brief and the authorities cited therein, the nature of the particular case involved is pertinent to the *Twombly* inquiry.   This is a case that addresses the improper handling of the Plaintiffs' insurance claims.  The Defendant, the Plaintiffs insurance company, is obviously in the position to best know all of the factual detail involved in the Defendant's handling of these insurance claims. The most basic premise in the Defendant's *Twombly* contentions in their Motion to Dismiss assumes that Plaintiffs' claims involve a particular claim denial or specific number of claim refusals involving some particular policy provision at issue.  Defendant's entire

21

assumption is incorrect.   See the Complaint setting forth the Plaintiffs' actual claim against their insurance company.   In fact, no such individual claim denials were even occurring.   For over six months, BCBS refused to honor their policy contract at all or to provide any acknowledgment, indemnity, response or indication of any kind with regard to these parents' claims.   Sherri Blaik contracted with BCBS over 10 years ago at the time of this child's birth to provide medical indemnity coverage for her medical treatment.   BCBS is contractually obligated to her to provide this medical coverage in accord with the policy provisions, including the policy's implied covenant of good faith and fair dealing.   Plaintiffs' claims are specific to the child's ABA therapy claims which she receives from the same provider weekend and week out.   Plaintiffs' Complaint notes the policy coverage for her ABA therapy as determined by this Court in 2018.   The Complaint specifically sets forth Plaintiffs' claims that all this child's ABA therapy claims since April of 2019 were involved in the specific conduct and actions described in detail in this Complaint.   Any *Twombly* contentions in connection with this particular Complaint are wholly misplaced.   The Complaint sets forth not only plausible but definitely unjustifiable bad faith conduct in this insurer's dealings with these insureds. There is very simply no legitimate argument that the very specific factual recitations, allegations and contentions of the Plaintiffs set forth in this Amended Complaint could fail to support a plausible cause of action exactly as set forth in this Amended Complaint. The *Twombly* contentions are entirely misplaced in the context of this complaint.   For that reason, the Court should deny the Defendant's Motion to Dismiss.

**MANSELL ENGEL & COLE**

By: s/Mark A. Engel
    Steven S. Mansell, OBA #10584
    Mark A. Engel, OBA #10796
    Kenneth G. Cole, OBA #11792
    204 North Robinson, 21st Floor
    Oklahoma City, OK 73102-7201
    T: (405) 232-4100 ** F: (405) 232-4140
    E-mail:  mengel@meclaw.net

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Samuel R. Fulkerson (sam.fulkerson@ogletree.com)
Lori Fixley Winland, (lori.winland@ogletree.com)

**ATTORNEYS FOR DEFENDANT**

s/Mark A. Engel