IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| A.B. a minor child, by and through her Parent and Legal Guardian SHERRI BLAIK, and SHERRI BLAIK, Individually, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-19-968-D |
| HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, d/b/a/ BLUE CROSS BLUE SHIELD OF OKLAHOMA, | ) ) ) ) ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court is Defendant Health Care Service Corporation's Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. No. 41], filed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]  Plaintiffs have filed a Response [Doc. No. 44], and Defendant has replied [Doc. No 47].  Thus, the Motion is fully briefed and at issue.

**Background**

The Second Amended Complaint [Doc. No. 33] was filed pursuant to the Order of July 17, 2020, granting a prior motion to dismiss with leave to amend.  *See* 7/17/20 Order [Doc. No. 24] (hereafter, "July Order").  The reader's familiarity with the July Order is

---

[1]  The Court authorized Defendant to file its Motion under seal to prevent a disclosure of protected health information of the minor child.  The parties' subsequent briefs regarding the Motion did not disclose protected information and were not sealed.  The Court finds that this Order also may be publicly filed.

presumed; a recitation of the factual and procedural background stated there will not be repeated. Briefly, the original Complaint and the Amended Complaint asserted tort claims by Plaintiff Sherri Blaik on behalf of herself and her minor child, A.B., for breach of an insurer's duty of good faith and fair dealing based on Defendant's alleged mishandling of claims submitted by A.B.'s medical care providers under a health insurance policy.[2] In the July Order, the Court found that Ms. Blaik lacked standing to bring a bad faith claim because only A.B. was insured under the policy, and that the Amended Complaint failed to state a plausible bad faith claim for A.B.

Plaintiffs have endeavored to cure the deficiencies found by the Court through the Second Amended Complaint, which now asserts claims for breach of contract and bad faith by Will Blaik and Sherri Blaik (A.B.'s parents) and by A.B. based on a number of additional allegations. By the Motion, Defendant asserts that Plaintiffs' effort nonetheless fails and that the same flaws, and some new ones, doom the amended pleading. Plaintiffs, of course, disagree. The Court proceeds to consider the issues presented, applying the same standards of decision previously stated. *See* July Order at 4-5.[3]

---

[2] This case rests on diversity jurisdiction and is governed by Oklahoma law.

[3] The Court notes that the Second Amended Complaint is also a supplemental pleading, providing facts that developed after the case was filed and advancing theories of recovery based on those facts. Defendant does not object to Plaintiffs' pleading on this basis so the Court does not address this change.

**Discussion**

**A.      Plaintiffs Will and Sherri Blaik's Standing**

Defendant asserts that A.B.'s parents lack standing to sue for any breach of contract or bad faith conduct because "A.B. is the *only* insured under the policy, and therefore the *only* person who has standing to bring claims related to the policy." *See* Mot. Dismiss at 2 (internal quotation omitted); Reply Br. at 1 ("A.B. *alone* is an insured under the contract."). Defendant contends its contractual and common law duties run only to its insured, A.B., for whom the insurance policy was purchased and who is the only person covered by the policy. Defendant's standing argument – although asserted under Rule 12(b)(1) – is not a jurisdictional matter. Defendant does not challenge whether A.B.'s parents have constitutional standing to challenge its denial of A.B.'s health insurance claims, but whether they have a cognizable right to relief. Defendant asserts that A.B.'s parents cannot sue for any breaches of duties owed only to A.B.[4]

_____

[4] Standing encompasses several doctrines, only one of which is constitutional standing – an element of the "case or controversy" requirement of Article III of the Constitution – that constitutes a jurisdictional requirement. *See VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 (10th Cir. 2017). Other doctrines include prudential and statutory standing, which are not jurisdictional. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387-88 (2014). "One element of prudential standing is the general prohibition on a litigant's raising another person's legal rights." *Commonwealth Prop. Advoc., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) (internal quotation omitted). Defendant arguably challenges the prudential standing of A.B.'s parents to assert their child's rights. However, in a somewhat analogous case addressing whether a foster child of a named insured could bring a bad faith claim, the Tenth Circuit viewed the issue as a matter of statutory or contractual standing:

> [T]he term "standing," as used by the parties and the controlling case law . . . , is meant in its ordinary sense of statutory or contractual standing – i.e., being in a position to assert or enforce legal rights or duties – and not in the sense of Article III

Unlike the Amended Complaint, which asserted only bad faith claims that were dismissed by the July Order, the Second Amended Complaint also asserts breach of contract claims and the question now presented is whether A.B.'s parents can assert such a claim.  In an apparent change of position from prior litigation and prior pleadings in this case, Mr. and Mrs. Blaik contend they are parties to or third-party beneficiaries of the insurance contract due to A.B.'s status as a minor and incompetent person and their parental obligation to provide her necessary care and support.  Defendant argues that judicial estoppel prevents a change of position at this point, and that the parents lack a sufficient basis to claim contractual rights under A.B.'s insurance policy.

### 1.      Judicial Estoppel

Defendant asserts that the doctrine of judicial estoppel "bars [Mr. and Mrs. Blaik] from arguing they are parties to A. B.'s policy."  *See* Def.'s Mot. at 14, n.6.  Defendant relies on earlier litigation between the parties, *A.B. ex rel. Blaik v. Health Care Serv. Corp.*, Case No. CIV-14-990-D (W.D. Okla. Sept. 14, 2014), that was ultimately settled and dismissed.  Defendant contends that, because the Court denied its motion for summary judgment in the first case based, in part, on an assertion that A.B. was the insured, "Plaintiffs cannot now argue that Mr. and Mrs. Blaik are the true policyholders." *See* Def.'s Mot. at 14-15 n.6.

---

standing. This type of standing goes to the merits of the claim and not the jurisdiction of this Court to hear it in the first instance.

*Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1229 n.6 (10th Cir. 2012).  Regardless of terminology, neither prudential nor statutory or contractual standing affect subject matter jurisdiction; thus, the issue is not governed by Rule 12(b)(1).  *See Niemi*, 770 F.3d at 1346.

"Judicial estoppel is an equitable remedy designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1207 (10th Cir. 2017) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). Defendant, as the party seeking to invoke the doctrine, bears a heavy burden "to show the need for its application" because it is "a 'powerful weapon' to be used only when less forceful remedies are inadequate." *Id*. at 1207-08 (quoting *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc*., 767 F.3d 987, 993 (10th Cir. 2014)). The Tenth Circuit has stated that "[t]hree factors typically inform a court's decision to judicially estop a party":

> First, a party takes a position that is clearly inconsistent with its earlier position.  Second, adopting the later position would create the impression that either the first or the second court was misled.  And third, allowing the party to change its position would give it an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id* (internal quotations and citations omitted); *see BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1239-40 (10th Cir. 2015).  Further, Defendant bears the burden to establish its affirmative defense by identifying "allegations in this lawsuit that were clearly inconsistent with [specific] statements" in the prior case.  *See Vehicle Mkt. Research*, 767 F.3d at 999; *see also BancInsure*, 796 F.3d at 1240 ("judicial estoppel only applies when the position to be estopped is one of fact, not one of law").

Upon consideration of Defendant's arguments regarding judicial estoppel, the Court finds that Defendant has failed to carry its burden at this stage of the case.  The Court assumes, without deciding, that Defendant can rely on statements in the earlier case as matters subject to judicial notice that are appropriate for consideration under

Rule 12(b)(6).  Defendant does not acknowledge or address in its briefs the three factors that guide the judicial estoppel analysis.  Thus, Defendant has not shown that judicial estoppel should bar a breach of contract claim by A.B.'s parents in this case.

### 2. Contractual Rights

Defendant asserts that A.B. was the applicant for the policy, the sole insured, and thus the only party with contractual rights under the policy.  To establish the first point regarding the insurance application, Defendant provides materials outside the Second Amended Complaint.  *See* Def.'s Mot. at 4; McMillin Decl. [Doc. No. 41-1, ¶¶ 4-8 & Ex. 3.  Defendant does not point to any allegations in Plaintiffs' pleading to support its argument that A.B. was the applicant for the policy, and the Court has found none. Defendant identifies no basis for considering this material under Rule 12(b)(6).  Thus, the Court does not reach this issue in ruling on Defendant's Motion.

Turning to the policy itself, Plaintiffs attach to the Second Amended Complaint a group of documents that allegedly constitute the health insurance policy covering A.B. *See* Second Am. Compl., Exs. 1-3 [Doc. Nos. 33-1, 33-2 and 33-3] (hereafter cited as the "Policy").  The documents are a form "Health Check *Select Care*" policy and contain no information regarding any specific individual.  Defendant agrees these documents constitute the insurance policy.  *See* Def.'s Mot. at 5 (describing Doc. No. 33-1 as "A.B.'s insurance contract").  Thus, the documents can properly be considered.

Plaintiffs claim that Mr. and Mrs. Blaik have contractual rights under the policy as either insureds or third-party beneficiaries.  Under Oklahoma law, to determine an insurer's contractual obligations to a claimant, a court "must examine the provisions of

the policy." *See May v. Mid-Century Ins. Co.*, 2006 OK 100, ¶ 22, 151 P.3d 132, 140. An insurance policy is a contract of adhesion and "is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, 812 P.2d 372, 376. "The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." *Id*. at 376; *see May*, 2006 OK 100, ¶ 22, 151 P.3d at 140 ("Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect.").

The policy in this case, as noted above, does not identify any insured; it merely contains a general certificate of coverage under a group insurance contract issued to a financial institution.  *See* Policy at 1.  Covered persons are "called Subscribers (or you, your)" and consist of all persons who have applied for and paid for coverage, have satisfied conditions of eligibility and enrollment, and have been approved by "Blue Cross and Blue Shield of Oklahoma (called the Plan, we, us, or our)."  *See id*.; *see also id*. at 71 (defining Member) and 74 (defining Subscriber).  Defendant agrees to pay for covered services, according to a schedule of benefits, that "you receive from a Hospital," physician, or other provider.  *Id*. at 24, 25, 39, 42.  Thus, the policy provides payment for medical treatment that a covered person receives from a service provider.  "Only Subscribers are entitled to Benefits from [the Plan] and they may not transfer their rights to Benefits to anyone else."  *Id*. at 51.  Payments due under the policy may be made

directly to service providers or to the subscriber, but again, the subscriber "cannot assign [his or her] right to receive payment to anyone else." *Id*. at 52. A subscriber can designate an authorized representative to act on his or her behalf in pursuing a claim or appeal. *Id*. at 58, 62.

The factual allegations of the Second Amended Complaint make clear that the only covered person under the policy is A.B., the individual receiving medical services. Mr. and Mrs. Blaik purchased the policy in A.B.'s name shortly after her birth because they were informed that separate "coverage in the child's name would provide them better coverage for their children's needs" and "[t]his option was designed and marketed to better cover the parents' medical expenses for a child's treatment." *See* Second Am. Compl. ¶¶ 8-9.[5] A.B. is now 12 years old, but she "lacks capacity not only as a minor but due to her permanent, physical, neurological deficit from a congenital brain defect." *Id*. ¶¶ 2, 13; *see id.* ¶ 35 (describing A.B.'s condition). Due to A.B.'s incapacity, her parents "are the persons contracting with BCBS for this indemnity coverage for medical bills, the persons that pay for this coverage for the medical expenses which they may incur, [and] the persons that make and handle claims to BCBS pursuant to their contract with BCBS . . . ." *Id*. ¶ 14.[6] Plaintiffs state that having health insurance for A.B.'s medical care serves to protect her parents' interests and indemnifies them because they

---

[5] Applying the Rule 12(b)(6) standard of decision (*see* July Order at 4), the Court accepts as true the facts alleged in the Second Amended Complaint.

[6] The omitted portion of the quoted material states that A.B.'s parents are "insured parties that contracted with this Defendant to cover this risk of loss that falls on Mr. and Mrs. Blaik." *Id*. This allegation of insured status is a legal conclusion that need not be accepted as true.

are otherwise obligated to pay her medical expenses.  *Id*. ¶ 18.  A.B.'s parents state their reason for purchasing the insurance policy was "to cover their legal responsibility for the payment of any medical expenses that they incurred for the appropriate and necessary treatment of their daughter."  *Id*. ¶ 19; *see id*. ¶¶ 29-31 (Mr. and Mrs. Blaik's economic interests and legal obligations were protected by the policy and their intent in purchasing it was to benefit themselves).  A.B.'s parents have "paid all the premiums for this policy coverage, handled all claims for indemnification under the policy, authorized and provided all necessary medical care for A.B., and were the persons legally responsible for the medical expenses indemnified by this policy."  *Id*. ¶ 32.

Despite these factual allegations, the Court finds that the provisions of the policy do not permit a conclusion that A.B.'s parents are, or should be deemed, insureds.  The policy reflects an intent to provide health insurance for A.B.; no other person's medical services are covered by the policy.  By its terms, A.B.'s parents have no right to receive any payment under the policy.  A payment made to anyone other than a service provider would be payable to the subscriber, A.B., and received by A.B.'s parents on her behalf. Although A.B.'s parents benefit from the policy to the extent Defendant's insurance payments may satisfy their parental obligation to provide A.B.'s support, or reimburse them for payments they have made for her medical services, the benefit to them is only an indirect one.  Thus, the insurance contract does not support a finding that A.B.'s parents are insureds under the policy.

A.B.'s parents attempt to avoid this conclusion by alleging in the Second Amended Complaint, and arguing in their brief, that A.B. cannot make any contracts due

to a lack of legal capacity and thus they are the contracting parties to any insurance policy made on her behalf.  *See* Second Am. Compl. ¶ 14 ("Because A.B. lacks the capacity, Mr. and Mrs. Blaik are the persons contracting with BCBS . . ."), ¶ 22 ("Only BCBS and Mr. and Mrs. Blaik could be parties to this contract."); *see also* Pls.' Resp. Br. at 21-23.  Plaintiffs primarily rely on common law doctrines regarding the parent-child relationship and a statute that authorizes a third person to "supply [a child's] necessaries and recover the reasonable value thereof from the parent."  *See* Pls.' Resp. Br. at 23 (quoting Okla. Stat. tit. 43, § 209.2).  As the parents liable for A.B.'s necessary care, Mr. and Mrs. Blaik claim to stand "in a derivative policyholder position" and to have a contractual interest in enforcing the policy against Defendant.  *See id.* at 24-25 (quoting *Ateyeh v. Volkswagen of Florence, Inc*., 288 S.C. 101, 103, 341 S.E.2d 378, 379 (1986)).[7]

Upon consideration, the Court concludes that the only principled way of finding the existence of a contractual relationship between A.B.'s parents and Defendant is to deem the parents to be the contracting parties in place of A.B. due to her alleged lack of capacity to make a contract.  Plaintiffs have not persuaded the Court of a legal basis for

---

[7] Defendant contends *Ateyeh* represents a minority view and should be disregarded.  *See*, *e.g.*, *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 198 (Nev. 1989) (declining to follow *Ateyeh* and adopting California view).  The Court does not reach this argument because the facts of *Ateyeh* are distinguishable.  The plaintiff in that case was seeking to enforce her deceased spouse's health insurance policy.  The South Carolina Supreme Court relied on the necessaries doctrine and a state statute creating spousal liability for medical expenses, and held that the surviving spouse could sue the insured's health insurer for payment of his medical expenses.  The court found that a "derivative" relationship existed between the surviving spouse and the insurer that allowed her to assume the position of policyholder and enforce the policy after his death.  This case does not present a survivorship issue.

this leap.  Plaintiffs cite in their pleading a statute that prevents a minor from disaffirming certain contracts.  *See* Second Am. Compl. ¶ 10 (citing Okla. Stat. tit. 15, § 20).  But Plaintiffs do not otherwise address, in any manner, Oklahoma statutes that expressly authorize contracts by minors and mentally disabled persons.  *See* Okla. Stat. tit. 15, §§ 17-18, 22-23.[8]  Further, a finding that A.B.'s parents are insureds under the policy would require the Court to disregard the policy language and the expressed intention of the parties (consistent with the factual allegations of the Second Amended Complaint) to obtain a health insurance policy that insured only A.B.

A.B.'s parents alternatively claim a contractual relationship with Defendant as third-party beneficiaries of the insurance policy because it was made for their benefit. *See* Second Am. Compl. ¶ 26.  Oklahoma case law holds that a third-party beneficiary of an insurance policy may have sufficient contractual rights to sue the insurer, such as the named beneficiary of a life insurance policy.  *See Roach v. Atlas Life Ins. Co.*, 1989 OK 27, ¶ 8, 769 P.2d 158, 161.  In assessing third-party beneficiary status, "the insured's reason for purchasing the insurance policy determines if the required contractual relationship exists."  *See Rednour v. JC&P P'ship*, 2000 OK CIV APP 10, ¶ 6, 996 P.2d 487, 489.  The third-party beneficiary need not be expressly named, but "the intention of the parties to the contract as reflected in the contract . . . must provide the answer to

---

[8]    The statutes regarding mental disability distinguish between persons "without understanding" and "of unsound mind;" the latter can make contracts "before his incapacity has been judicially determined."  *See* Okla. Stat. tit. 15, § 23.  The Second Amended Complaint makes conclusory allegations that A.B. "lacks capacity" without attempting to identify her degree of legal disability.

the question of whether the contracting parties intended that a third person should receive a benefit that might be enforced by the courts." *Id*. ¶ 8, 996 P.2d at 489 (quoting *Keel v. Titan Constr. Corp*., 1981 Okla. 148, ¶ 5, 639 P.2d 1228, 1231); *accord Gianfillippo v. Northland Cas. Co*., 1993 OK 125, ¶ 10, 861 P.2d 308, 309 (passenger was not third-party beneficiary of driver's insurance policy; the policy "was intended for the benefit of the insured [driver]" and "benefitted [passenger] only incidentally).

The Court finds that for Mr. and Mrs. Blaik, like the claimant in *May*, the insurance policy expressly negates any contractual relationship with the insurer, and the analysis ends there. *See May v. Mid-Century Ins. Co.*, 2006 OK 100, ¶ 24, 151 P.3d 132, 140. The Oklahoma Supreme Court addressed in *May* the question of whether the owner of an individual condominium unit had a contractual relationship with an insurer that provided property insurance to the condominium owners' association. The owner was not a named insured under the policy, but the policy provided coverage for property loss and fire damage to her unit. The insurance policy contained a loss payment provision that gave "Insurer the exclusive choice to settle the covered losses directly with the unit owners or with the Association for the account of the unit owners." *May*, 2006 OK 100 ¶ 24, 151 P.3d at 140. Based primarily on this provision, the supreme court held that "[t]he contract's expressed intent to confer solely on Insurer the power to regard all contractual obligations due under the policy as extending to the named insured specifically negates the existence of any enforceable obligation in favor of unit owners *qua* third-party beneficiaries." *Id*. (emphasis omitted). The court found it "crystal-clear from the terms of the policy" that that "the parties to the policy – Insurer and [the

insured] Association – did not intend to confer on any third-party unit owner a legally enforceable right of recovery against Insurer." *Id.* ¶ 24, 151 P.3d at 140-41.

Similarly here, the policy allowed Defendant to pay either the health care provider or A.B., but prevented a transfer of A.B.'s benefits or assignment of her payment rights to anyone else.  A.B.'s parents had no legally enforceable right of recovery against Defendant under the policy for payment of a covered claim.  The Court is persuaded by the Oklahoma Supreme Court's analysis in *May* that A.B.'s parents cannot be treated as third-party beneficiaries of the policy even though it may have inured to their benefit. The supreme court summarily rejected in *May* a similar argument by the condominium owner because the insurance policy's payment provision precluded the argument:  "No obligation may be imposed upon a promissor in favor of a third party if the contract expressly relieves that promissor of such liability to that third party."  *May*, 2006 OK 100 ¶ 24, 151 P.3d at 140 (emphasis and footnote omitted).  The court reasoned:

> A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promissor and promisee.  One to whom, by the express terms of a contract, no obligation is due from its promissor, cannot qualify for the status of an intended or implied third-party beneficiary.  The express contractual negation of the promissor's duty to the third-party status seeker operates to exclude that third party from legal recognition as third-party promisee.

*May*, 2006 OK 100 ¶ 25, 151 P.3d at 141 (footnotes omitted).

For the same reason in this case, the Court finds that A.B.'s insurance policy expressly bars any contractual obligation by Defendant to A.B.'s parents and thus they cannot qualify as third-party beneficiaries of the policy.

In summary, as discussed *infra*, the Second Amended Complaint properly asserts a breach of contract claim by A.B., acting through Mrs. Blaik as her parent and legal guardian, to recover damages for unpaid claims or services allegedly covered by A.B.'s insurance policy.  Plaintiffs have failed to demonstrate a viable legal basis for Mr. and Mrs. Blaik to personally assert their own individual breach of contract claims to recover the same damages.  Accordingly, for the reasons previously stated in the July Order, A.B.'s parents also cannot bring their own bad faith claim against Defendant (in addition to one on behalf of A.B.) for allegedly failing to act in good faith in handling A.B.'s insurance claims and making coverage decisions.

For these reasons, the Court finds that Defendant's Motion should be granted with respect to the claims of A.B.'s parents individually for breach of A.B.'s insurance contract and bad faith conduct by A.B.'s insurer.  Mr. and Mrs. Blaik's action against Defendant in their individual capacities must be dismissed.

**B.    A.B.'s Breach of Contract Claim**

**1.    Compliance with Policy Provisions**

Defendant first seeks the dismissal of A.B.'s contract claim based on an alleged failure of her authorized representative to comply with policy provisions that require an insured to appeal the denial of a claim and to exhaust administrative procedures for review of adverse decisions.  Specifically, Defendant points out that the policy provides a two-level appeal process and imposes timeliness requirements, and that the Second Amended Complaint "does not allege A.B. pursued two appeals of the decisions at issue in this case."  *See* Def.'s Mot. at 18.  Defendant asserts that A.B.'s contract claim is

barred by noncompliance with these provisions of the policy that impose mandatory preconditions to suit.[9]

Under federal pleading rules, a plaintiff is expressly permitted to "allege generally that all conditions precedent have occurred or been performed."  *See* Fed. R. Civ. P. 9(c). A.B. has done so here.  *See* Second Am. Compl. ¶ 105.  Then the party "denying that a condition precedent has occurred or been performed . . . must do so with particularity." Fed. R. Civ. P. 9(c).  Consistent with this rule, "the usual practice under the Federal Rules is to regard exhaustion as an affirmative defense" rather than a pleading obligation of the plaintiff.  *See Jones v. Bock*, 549 U.S. 199, 212 (2007); *see id*. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").  In the Court's view, Defendant's assertion that A.B.'s contract claim is barred by her failure to complete an administrative appeals process mandated by the policy is an affirmative defense rather than an element of her claim.

Although Defendant raises an affirmative defense in its Motion, Rule 12(b)(6) permits the dismissal of a claim that is barred by an affirmative defense where the facts necessary to determine the defense appear on the face of the complaint.  *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (dismissal based on an

---

[9]  Primarily to counter these arguments, Plaintiffs have offered during the pendency of the Motion to provide additional documentation regarding further appeal proceedings and additional adverse decisions by Defendant during 2020 and 2021.  *See* Pls.' Mot. File Suppl. Evid. [Doc. No. 50].  For reasons discussed *infra*, the Court finds that these documents and additional facts are not necessary to resolve Defendant's Motion and, thus, Plaintiffs' Motion should be denied.

affirmative defense is proper where "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements"); *accord Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019); 5B C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 713 (3d. ed. 2004) (affirmative defense can succeed under Rule 12(b)(6) if complaint has a "built-in defense and is essentially self-defeating"). Upon careful consideration of Defendant's arguments, the Court finds the Second Amended Complaint does not present a self-defeating claim. Defendant instead relies on a lack of allegations in the Second Amended Complaint to show that A.B. fully completed the appeals process regarding her insurance claims. *See* Def.'s Mot. at 18 (arguing that Plaintiffs' pleading "does not allege that A.B. pursued two appeals of the decisions at issue in this case with respect to any adverse benefit determination"); Reply Br. at 7 ("A.B. never alleges that *she* appealed the Precertification Denial"). Also, Plaintiffs argue in opposition to dismissal that doctrines such as futility and estoppel excuse any lack of exhaustion. Under these circumstances, Defendant's exhaustion defense cannot be decided based solely on the face of the Second Amended Complaint.

In short, Defendant's challenge to the Second Amended Complaint for lack of administrative exhaustion raises defensive matter rather than a pleading deficiency. The Court cannot conclude on this basis that A.B. has failed to state a breach of contract claim.

### 2.      Elements of a Contract Claim

Defendant also asserts that the Second Amended Complaint fails to state a breach of contract claim because it does not allege sufficient facts to support a plausible claim.[10] Defendant submits documents to show it ultimately paid all benefit claims that were allegedly denied (*id*. at 6-7) and later processed a precertification request from A.B.'s service provider (*id*. at 8-10) and, from these facts, to argue that A.B. "has suffered no damages based on any hypothetical denial of coverage." *Id*. at 22.

Under Oklahoma law, A.B. must establish the following essential elements to establish a breach of contract claim:  a contract between the parties existed; the contract required certain payments to be made or obligations to be performed, as alleged; and Defendant breached the contract, and caused damages, by failing to make the payments or perform the obligations. *See Digital Design Grp., Inc. v. Info. Builders, Inc*., 2001 OK 21, ¶ 33, 24 P.3d 834, 843 ("In order to recover on its breach of contract theory, [plaintiff] needed to prove: 1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach."); *accord Cates v. Integris Health, Inc.*, 2018 OK 9, ¶ 11, 412 P.3d 98, 103, *cert. denied*, 138 S. Ct. 2659 (2018).

Assessing the Second Amended Complaint in the context of these elements and the Rule 12(b)(6) standard, the Court is unpersuaded by Defendant's argument that Plaintiffs' pleading fails to state a breach of contract claim.  To avoid dismissal,

---

[10]  Defendant first argues, incorrectly, that the Court in the July Order "identified the facts Plaintiffs needed to allege to state a claim" and that the Second Amended Complaint does not supply all those facts.  *See* Def.'s Mot. at 19.  The July Order addressed only bad faith claims; no breach of contract claim was asserted in the Amended Complaint.

Plaintiffs must only provide sufficient facts, accepted as true, to state a plausible claim. Defendant cannot obtain a dismissal by arguing that documents show all properly submitted benefit claims were eventually paid, even though Plaintiffs allege in the Second Amended Complaint that some claims were denied, some payments were improperly delayed, and some services were wrongly denied precertification approval. These arguments go to the merits of A.B.'s contract claim and not the adequacy of Plaintiffs' pleading.

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). Further, "Rule 8(a)(2) still lives." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). A plaintiff's pleading "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Assessing the Second Amended Complaint under this standard, the Court finds that it states a plausible claim that Defendant breached its insurance contract with A.B. by failing to pay claims for covered services in a timely manner and to process properly a provider's request for precertification of medically necessary services. The Court therefore

finds that A.B.'s breach of contract claim should not be dismissed and that Defendant's Motion should be denied with respect to this claim.

**C.      A.B.'s Bad Faith Claim**

To establish a breach of Defendant's duty of good faith and fair dealing with its insured under Oklahoma law, A.B. must show that Defendant breached the insurance contract and, in so doing, acted in a manner constituting bad faith. *See Brown v. Patel*, 2007 OK 16, ¶ 9, 157 P.3d 117, 121; *see also Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 25, 121 P.3d 1080, 1093 (per curiam). Generally, to state a bad faith claim, a plaintiff must allege that:  (1) the insurer was required under the insurance policy to pay a claim; (2) the refusal to pay the claim was unreasonable under the circumstances because (a) the insurer had no reasonable basis for refusing, (b) the insurer did not perform a proper investigation, or (c) the insurer did not evaluate the results of the investigation properly; (3) the insurer did not deal fairly and in good faith with the insured; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of damages sustained by the insured. *See Duensing v. State Farm Fire & Cas. Co.*, 2006 OK CIV APP 15, ¶ 131 P.3d 127, 138*; see also Badillo*, 2005 OK 48, ¶ 25, 121 P.3d at 1093 (citing OUJI–CIV (2d) 22.3).

Upon consideration of the detailed factual allegations of the Second Amended Complaint, the Court finds that they are sufficient to state a plausible bad faith claim on behalf of A.B.  Plaintiffs assert that the type of therapy A.B. has received for several years is covered by the insurance policy but that Defendant has repeatedly and wrongly denied coverage, delayed payments for covered claims submitted by A.B.'s therapy provider,

improperly pressured the provider to reduce A.B.'s services below a level that is medically necessary, and failed to provide a fair and independent external review of the reduction in approved services. Plaintiffs further allege that Defendant's bad faith conduct has caused a serious decline in A.B.'s physical and emotional health. Assessing the Second Amended Complaint under the proper standards, the Court finds that it sufficiently states a bad faith claim for A.B.

## Conclusion

For all of these reasons, the Court finds that A.B.'s parents lack any contractual relationship with Defendant and cannot bring their own individual claims for breach of contract and bad faith, but that the Second Amended Complaint is minimally sufficient to state plausible claims for breach of contract and bad faith asserted by A.B. through her parent and legal guardian, Sherri Blaik.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. No. 41] is **GRANTED** in part and **DENIED** in part. The claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually are dismissed. The claims asserted on behalf of A.B. are sufficient to proceed further.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to File Supplemental Evidence in Support of Their Response in Opposition to Defendant's Motion to Dismiss [Doc. No. 50] and Defendant's Motion for Leave to File Sur-Reply [Doc. No. 55] are **DENIED** as moot.

**IT IS SO ORDERED** this 23rd day of September, 2021.

TIMOTHY D. DeGIUSTI
Chief United States District Judge