## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILL BLAIK and SHERRI BLAIK, husband and wife, and A. B., a minor child, by and through her Parent and Legal Guardian, SHERRI BLAIK, <br><br> *Plaintiffs*, <br><br> v. <br><br> HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, d/b/a BLUE CROSS BLUE SHIELD OF OKLAHOMA, <br><br> *Defendant*. | Case No: 5:19-cv-00968-D |

## DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Health Care Service Corporation ("HCSC"), an Illinois Mutual Legal Reserve Company, d/b/a Blue Cross and Blue Shield of Oklahoma, by its undersigned counsel, hereby answers Plaintiff's Second Amended Complaint (Dkt. 33) (the "SAC") based on its present knowledge and asserts the following defenses. HCSC reserves the right to supplement and amend this Answer and to add additional defenses. All allegations not specifically admitted are denied. To the extent that headings and the introduction in the SAC are not included in numbered paragraphs, no response is required because those allegations violate Federal Rule 10(b). To the extent a response is required, HCSC denies the allegations in the headings and introduction. HCSC further answers the SAC as follows:

1.     Plaintiffs, Will Blaik and Sherri Blaik, ("Mr. and Mrs. Blaik") are both citizens and residents of Oklahoma City, Oklahoma, Oklahoma County, State of Oklahoma.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 1, and on that basis denies them.

2.     A.B., a minor child, is a twelve-year old girl, the daughter of Mr. and Mrs. Blaik. A.B. has lived with her parents, Mr. and Mrs. Blaik, in Oklahoma City since the time of her birth and has been under the care of her parents, Mr. and Mrs. Blaik, who are able to and do provide for A.B.

**ANSWER:**   HCSC admits that A.B. is a minor child and the daughter of Mr. and Mrs. Blaik. HCSC lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 2, and on that basis denies them.

3.     Defendant, Health Care Service Corporation, d/b/a Blue Cross Blue Shield of Oklahoma, (hereinafter "BCBS") is a mutual legal reserve company with its principal place of business in Illinois and does business in the State of Oklahoma as Blue Cross Blue Shield of Oklahoma. BCBS is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as Glen Mulready, Oklahoma Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

**ANSWER:**   HCSC admits that it is an Illinois Mutual Legal Reserve Company that has its principal place of business in Chicago, Illinois. Moreover, HCSC admits that Blue

2

Cross and Blue Shield of Oklahoma ("BCBSOK") is a division of HCSC, and that HCSC does business in the state of Oklahoma as BCBSOK. HCSC denies the remaining allegations contained in Paragraph 3.

4.     The amount sought as damages in this case is in excess of the amount required for diversity jurisdiction, and the Court has diversity jurisdiction of this case, pursuant to §1332 of Title 28 of the United States Code.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief as to the amount sought as damages in this case, and on that basis denies the allegations in the first clause of Paragraph 4. The remainder of Paragraph 4 sets forth legal conclusions and characterizations to which no response is required. To the extent a response is required, HCSC denies the allegations in Paragraph 4.

5.     Venue is proper in this Court.

**ANSWER:**    HCSC admits the allegations in Paragraph 5.

6.     On the date of A.B.'s birth, July 3, 2008, Mr. and Mrs. Blaik were Members of Blue Cross Blue Shield of Oklahoma under a health insurance plan issued by BCBS providing indemnity benefits for covered health insurance expenses.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 6. To the extent a response is required, HCSC admits that Mr. Blaik was a member of BCBSOK in July 2008 by virtue of a policy issued by BCBSOK,

and HCSC admits that such health insurance policy provided for certain benefits for covered health related services. HCSC denies the remaining allegations in Paragraph 6.

7.     Mr. and Mrs. Blaik's health insurance contract with BCBS provided that "You have the option of selecting coverage under your membership for your Dependent children, or you may purchase separate coverage in their names".

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 7. To the extent a response is required, HCSC admits that the language quoted above appears in part of A.B.'s health insurance policy, but denies the remaining allegations in Paragraph 7.

8.     Pursuant to their membership and contract with BCBS, Mr. and Mrs. Blaik chose to purchase separate coverage in A.B.'s name, just as they had done for their newborn son, at his birth, several years previously.

**ANSWER:**   HCSC admits that a separate insurance policy was purchased by A.B. HCSC lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 8, and on that basis denies them.

9.     Mr. and Mrs. Blaik were informed by BCBS that the coverage in the child's name would provide them better coverage for their children's needs and was the best coverage for children's medical expenses and for being able to select your own doctors. This option was designed and marketed to better cover the parents' medical expenses for a child's treatment for i.e., immunizations, regular office visits, lower deductibles, etc.

4

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 9. To the extent a response is required, HCSC lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 9, and on that basis denies them.

10.     Mr. and Mrs. Blaik are legally responsible for, and the only persons legally liable for, medical expenses incurred in the treatment of their daughter. Okla. Stat. 43 §209.2 (2009). Since A.B. has always been under the care of her parents, who are able to provide for her, and she cannot be made to incur any medical obligations for her own care or treatment. Okla. Stat. 15 §20.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 10. To the extent a response is required, Paragraph 10 sets forth legal conclusions and characterizations to which no response is required and therefore denies the allegations in Paragraph 10.

11.     The peril Mr. and Mrs. Blaik contracted with BCBS to insure was their risk of loss due to necessary medical expenses for the treatment of A.B. and they are the sole persons legally responsible for the covered peril. This coverage Mr. and Mrs. Blaik purchased from BCBS in the name of A.B. provides indemnity benefits on covered medical expenses incurred by Mr. and Mrs. Blaik for the treatment of their daughter.

**ANSWER:**   HCSC admits that a health insurance policy was purchased by A.B.. Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC otherwise has no obligation to respond to the allegations in Paragraph 11. To the extent a response is required, HCSC denies the allegations in Paragraph 11.

12.    All medical treatment for A.B. must be approved and authorized by Mr. and Mrs. Blaik, who become the persons legally obligated for payment of the medical expenses incurred for their daughters authorized treatment.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first clause of Paragraph 12, and on that basis deny them. Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the remaining allegations in Paragraph 12. To the extent a response is required, HCSC denies the remaining allegations in Paragraph 12.

13.    A.B. lacks capacity, not only as a minor, but also due to her permanent, physical, neurological deficit from a congenital brain defect.

**ANSWER:**   HCSC admits that A.B. has been diagnosed with a congenital brain defect. The remaining allegations in Paragraph 13 set forth legal conclusions and characterizations to which no response is required. To the extent a response is required, HCSC denies the remaining allegations in Paragraph 13.

14.     Because A.B. lacks the capacity, Mr. and Mrs. Blaik are the persons contracting with BCBS for this indemnity coverage for medical bills, the persons that pay for this coverage for the medical expenses which they may incur, the persons that make and handle claims to BCBS pursuant to their contract with BCBS and are, otherwise, insured parties that contracted with this Defendant to cover this risk of loss that falls on Mr. and Mrs. Blaik.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 14. To the extent a response is required, HCSC denies the allegations in Paragraph 14.

15.     Attached as Ex. 1 is a document entitled Blue Cross Health Plans of Oklahoma Health Check Select Care. This is the document BCBS has presented claiming that it is the insurance policy. The document bears the bates-stamp "CONFIDENTIAL HCSC-BLAIK-00406 – CONFIDENTIAL HCSC-BLAIK-00512" and bears the stamp "Defendant's Trial Ex. 2". This is the document the insurance company has provided to Mr. and Mrs. Blaik relative to their purchase of this insurance indemnity coverage for their medical expenses from medical services provided to their daughter.

**ANSWER:**   HCSC admits that Exhibit 1 to the Second Amended Complaint is part of A.B.'s insurance policy, but deny that it is the complete insurance policy. HCSC further admits that the document attached as Exhibit 1 bears the bates stamp "CONFIDENTIAL HCSC-BLAIK-00406 – CONFIDENTIAL HCSC-BLAIK-00512" and bears the stamp

"Defendant's Trial Ex. 2." HCSC further admits that Exhibit 1 was produced to A.B. as part of discovery in a prior lawsuit. HCSC denies the remaining allegations in Paragraph 15.

16.     The document that BCBS claims is the insurance policy makes reference to a group contract that has never been produced or provided to Mr. and Mrs. Blaik. The attached document states that the group contract is the controlling document. The document BCBS asserts does not contain A.B.'s name, does not contain a definition of insured under the policy, nor does it use the word insureds at any place in this document. **The document they sent to Mr. and Mrs. Blaik** indicates that "Beginning on your effective date, we agree to provide **you** the Benefits described in the Contract". Emphasis added. The document does not define "you". The document was sent to Mr. and Mrs. Blaik. The word Contract is defined as the agreement between your financial institution and us, referred to as the Master Contract or Group Contract. Obviously, A.B. did not have a financial institution at the time and "you" and "your financial institution" refers to Mr. and Mrs. Blaik. The word Benefits is defined as "the payment, reimbursement, indemnification of any kind which you will receive from and through the Plan under this Certificate. Of course, all such reimbursements or indemnification would be to indemnify Mr. and Mrs. Blaik, the sole persons that could incur any liability for medical expenses entitled to indemnification, unless Mr. and Mrs. Blaik assigned, and thereby authorized, payment directly to the medical provider. Although this document, by its terms, does not appear to be the actual policy contract, as BCBS claims, it verified that the contract for the insurance

coverage purchased by Mr. and Mrs. Blaik at the time of their daughter's birth was a contract between Mr. and Mrs. Blaik and BCBS that promised to pay them benefits.

**ANSWER:**   HCSC admits that A.B. has an insurance policy issued by BCBSOK, and HCSC refers the Court to that document for its complete and accurate contents. Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the remaining allegations in Paragraph 16. To the extent a response is required, HCSC denies the remaining allegations in Paragraph 16.

17.     This document provided to Mr. and Mrs. Blaik specifies that the "Contract" is an agreement between BCBS and Mr. and Mrs. Blaik's financial institution. See page 66, CONFIDENTIAL HCSC-BLAIK-00474. Mr. and Mrs. Blaik have not been provided or even seen that Contract.

**ANSWER:**   HCSC admits that A.B. has an insurance policy issued by BCBSOK, and refers the Court to that document for its complete and accurate contents. Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the remaining allegations in Paragraph 17. To the extent a response is required, HCSC denies the remaining allegations in Paragraph 17.

18.     Various writings may evidence the contractual agreement between Mr. and Mrs. Blaik and BCBS. However, Mr. and Mrs. Blaik were already BCBS Members and are insureds under this insurance policy whereby BCBS has undertaken to indemnify them

upon determinable contingencies. *See*, Okla. Stat. title 36 §102. Those contingencies involve Mr. and Mrs. Blaik's legally incurred medical expenses for the treatment they authorize for their daughter. Mr. and Mrs. Blaik are insureds under this insurance. Mr. and Mrs. Blaik are persons who contracted for an insurance policy that indemnifies them against their loss. Mr. and Mrs. Blaik are persons whose interests are protected by an insurance policy. This insurance policy does not provide medical care, but indemnity for certain covered medical expenses. Mr. and Mrs. Blaik's insurance contract with BCBS is not <u>intended</u> to indemnify A.B., but to indemnify her parents' medical expenses for her care. Mr. and Mrs. Blaik's insurance policy that they purchased from BCBS is <u>intended</u> to indemnify Mr. and Mrs. Blaik in order to protect their interests to pay and provide for their medical expenses associated with their daughter's medical care.

**<u>ANSWER:</u>**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 18. To the extent a response is required, HCSC denies the allegations in Paragraph 18.

19.     It is irrelevant whether health care providers or A.B. or others are entitled to payment of insurance proceeds, Mr. and Mrs. Blaik's reason for purchasing the insurance policy determines if the required contractual relationship exists. Mr. and Mrs. Blaik purchased this insurance policy from BCBS in order to cover their legal responsibility for the payment of any medical expenses that they incurred for the appropriate and necessary treatment of their daughter.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 19. To the extent a response is required, HCSC denies the allegations in Paragraph 19.

20.     Mr. and Mrs. Blaik's insurance policy with BCBS was drafted and purchased in order to benefit Mr. and Mrs. Blaik's obligation to provide and pay for their child's necessary medical care, as a contractual option provided for such Members of BCBS with dependent children.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 20. To the extent a response is required, HCSC denies the allegations in Paragraph 20.

21.     The parties' primary intent as reflected in the policy is that the determinable contingencies upon which the insurance policy provides its indemnity coverage is for certain covered services provided to A.B. and the reasonable and necessary expenses for the same. Similarly, as reflected in the policy, the primary intent of the contracting parties, Mr. and Mrs. Blaik and BCBS, was that the insurance policy provide indemnity for Mr. and Mrs. Blaik's risk of incurring such medical expenses in providing this medical care for the daughter.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to

the allegations in Paragraph 21. To the extent a response is required, HCSC denies the allegations in Paragraph 21.

22.     Only BCBS and Mr. and Mrs. Blaik could be parties to this contract.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 22. To the extent a response is required, HCSC denies the allegations in Paragraph 22.

23.     To preclude Mr. and Mrs. Blaik from bringing a bad faith claim "would negate a substantial reason for the insured's purchase of the policy – the peace of mind and security which it provides in the event of loss."

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 23. To the extent a response is required, HCSC denies the allegations in Paragraph 23.

24.     BCBS's obligations under this insurance policy with Mr. and Mrs. Blaik involve an express promise to provide this indemnification for their described losses, the promise implied in fact, and/or a promise implied in law.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 24. To the extent a response is required, HCSC denies the allegations in Paragraph 24.

25.     When BCBS Members, Mr. and Mrs. Blaik, elected the option to purchase and pay for separate coverage in A.B.'s name, A.B. was also enrolled as a Member with BCBS and is entitled, separately, to enforce all of BCBS's obligations under the insurance policy purchased by her parents. As an enrolled BCBS Member, A.B. is both an insured of this insurance contract and an intended third-party beneficiary of the contract. This health insurance contract is intended to benefit this child's access to needed medical care.

**ANSWER:**   HCSC admits that, prior to obtaining her own insurance policy, A.B. was a beneficiary of a different insurance policy purchased by William Blaik's employer. The remaining allegations in Paragraph 25 set forth legal conclusions and characterizations to which no response is required. To the extent a response is required, HCSC denies the remaining allegations in Paragraph 25

26.     Mr. and Mrs. Blaik, in addition to being insureds under their contract for insurance with BCBS are, additionally, or in the alternative, intended third-party beneficiaries of this insurance policy for the reason that the contracting parties intended to benefit Mr. and Mrs. Blaik. Indeed, at the time of A.B.'s birth, both BCBS and Mr. and Mrs. Blaik, were both aware that the infant A.B. could not and would not be paying any of the premiums for this insurance coverage, did not have the capacity to either contract for insurance, nor to become obligated for medical expenses, or even seek out any treatment or claims at all. Rather, the contracting parties, Mr. and Mrs. Blaik and BCBS, knew and intended that Mr. and Mrs. Blaik were the persons legally responsible for her medical treatment and payment of her medical bills and were securing this insurance policy to

indemnify Mr. and Mrs. Blaik in the event they incurred such medical expenses for their daughter. The contracting parties intended to benefit Mr. and Mrs. Blaik by explaining to them that electing this option for dependent coverage would provide better indemnification for their medical expenses tailored for their expenses more likely to be incurred for treatment of their child. The insurance policy does not determine or dictate what medical care will be provided to A.B. Rather, it provides indemnification for specified medical expenses for the intended persons, Mr. and Mrs. Blaik, that would otherwise be responsible for payment of the same.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 26. To the extent a response is required, HCSC denies the allegations in Paragraph 26.

27.    Mr. and Mrs. Blaik, BCBS members, discussed their options of covering their child as a dependent under their own plan or selecting separate coverage in A.B.'s name, as entitled by their contract, in order to provide the very best coverage for medical expenses that might be needed for their child. BCBS talked to these Members in contracting with Mr. and Mrs. Blaik to purchase this policy clearly intending that it better benefit Mr. and Mrs. Blaik in covering expenses for needed treatment for their daughter. BCBS knew that Mr. and Mrs. Blaik were obligated to pay for A.B.'s medical expenses and contracted with them for this indemnity health insurance policy intending to cover this risk and to benefit Mr. and Mrs. Blaik for their risk of loss.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 27, and on that basis denies them. Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the remaining allegations in Paragraph 27. To the extent a response is required, HCSC denies the remaining allegations in Paragraph 27.

28.     The determination of BCBS's actual intent and Mr. and Mrs. Blaik's actual intent when contracting to sell/purchase this insurance policy and whether the insurance policy was intended by these contracting parties to benefit Mr. and Mrs. Blaik is an issue of fact.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 28. To the extent a response is required, HCSC denies the allegations in Paragraph 28.

29.     In this circumstance, the economic interests of Mr. and Mrs. Blaik were covered by the insurance policy.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 29. To the extent a response is required, HCSC denies the allegations in Paragraph 29.

30.     A legal obligation of Mr. and Mrs. Blaik for A.B.'s medical expenses for her care and treatment were covered by the insurance policy.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 30. To the extent a response is required, HCSC denies the allegations in Paragraph 30.

31.     When these BCBS Members elected their option to carry their coverage for their daughter's medical expenses as a separate coverage in her name, it allowed them to enroll A.B. as a BCBS member as well and it modified the determinable contingencies and amounts of indemnification that might be available in connection with Mr. and Mrs. Blaik's decisions for treatment of their daughter. However, the intent of the contracting parties, BCBS and Mr. and Mrs. Blaik, was still intended to benefit Mr. and Mrs. Blaik in covering and paying for their daughter's medical expenses, just as it was if these members had decided, instead, to simply continue her coverage as a dependent under their existing contract with BCBS. BCBS has not claimed that it intended to deprive Mr. and Mrs. Blaik of their ability to enforce their insurance contract with BCBS at the time BCBS counseled them to select this Member option.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 31. To the extent a response is required, HCSC denies the allegations in Paragraph 31.

32.     Mr. and Mrs. Blaik are not injured third parties maintaining a liability action against the tortfeasor's insurer, nor are they third-party strangers to this contract in any respect. Mr. and Mrs. Blaik are the BCBS Members that elected, were sold, purchased and paid for this insurance contract whereby BCBS undertook to indemnify them and to pay specified amounts based upon determinable contingencies, being certain, defined, covered medical expenses they might incur for the treatment of their daughter. At all times since their daughter's birth, they have paid all the premiums for this policy coverage, handled all claims for indemnification under the policy, authorized and provided all necessary medical care for A.B., and were the persons legally responsible for the medical expenses indemnified by this policy. The policy delivered to them states that BCBS "will provide you the benefits described in the contract." That promise to Mr. and Mrs. Blaik has been breached.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 32. To the extent a response is required, HCSC denies the allegations in Paragraph 32.

33.     Within six (6) months of birth, A.B. was recognized to have some considerable deficits. A.B. has a neurological condition which was diagnosed in April 2010 which requires intense therapy, including physical, occupational, speech and Applied Behavior Analysis (ABA) therapy to permit a more normal life.

17

**ANSWER:**   HCSC admits that A.B. has been diagnosed with a congenital brain defect. HCSC denies the remaining allegations in Paragraph 33.

34.     A. B. has received needed, extensive medical services principally beginning when she was about one (1) year old and continues to receive those medical services to date.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 34, and on that basis denies them.

35.     A.B.'s medical condition is Hypoplasia of the Corpus Colosseum, a neurological birth defect. The corpus colosseum is the layer of nerve fibers that separates the left side of the brain from the right side of the brain. Millions of nerve fibers act to allow the left side of the brain to communicate with the right side of the brain for normal functioning of the brain. With Hypoplasia of the Corpus Colosseum, this central bundle of nerve fibers in the brain is absent or partially absent. This congenital brain deficit results in severe incapacitating deficits for A.B.

**ANSWER:**   HCSC admits that A.B. has been diagnosed with Hypoplasia of the Corpus Colosseum, which is a neurological defect, but denies that the remaining description of that condition is complete or accurate. HCSC denies the remaining allegations in Paragraph 35.

36.     All of the medical expenses from the ABA therapists were always denied coverage by BCBS since 2011 and, eventually, BCBS began to deny the claims involving her speech therapy expenses as well. A.B. was nine years old and could not even speak a

sentence when BCBS began to deny indemnity for her speech therapy expenses in 2018. A lawsuit was instituted to address the denials of A.B.'s speech therapy and ABA therapy.

**ANSWER:**   HCSC admits that A.B. previously filed a lawsuit against HCSC involving coverage for ABA therapy and speech therapy. HCSC denies the remaining allegations in Paragraph 36.

37.     In the previous lawsuit, this Court ruled on the BCBS Motion for Summary Judgment in February of 2018. *See, A.B. by & through Blaik v. Health Care Serv. Corp.*, No. CIV-14-990-D, 2018 WL 840764, at *1 (W.D. Okla. Feb. 12, 2018). This Court found that A.B. was diagnosed with a neurological condition in 2010, which requires extensive therapy and continuous medical services, to include ABA therapy. *Id*. at 2 ¶5. This Court further concluded that "ABA therapy falls within provisions extending coverage for outpatient services, physical therapy and occupational therapy for treatment of an injury or illness." *Id*. at p. 7. This Court has already determined that the involved insurance policy covers A.B.'s ABA therapy expenses.

**ANSWER:**   HCSC admits that A.B. previously filed a lawsuit captioned *A.B., a minor child, by and  through her Parent and Legal Guardian, Sherri Blaik v. Health Care Serv. Corp. d/b/a Blue Cross Blue Shield of Oklahoma*, No. CIV-14-990-D (W.D. Okla.). HCSC further admits that the Court issued an opinion and order regarding summary judgment in that case, and HCSC refers the Court to that opinion for its complete and accurate contents. HCSC denies the remaining allegations in Paragraph 37.

38.     Following the Court's Order in February 2018, BCBS still completely refused to provide any indemnity benefits of any kind for A.B.'s ABA therapy, ignoring this Court's finding that her expenses were covered by their insurance policy.

**ANSWER:**   HCSC denies the allegations of Paragraph 38.

39.     In the previous case, BCBS argued that there had been later revisions and endorsements to the policy which may have affected and changed the policy's coverage for A.B.'s ABA therapy. On behalf of A.B., Plaintiffs briefed and demonstrated that Oklahoma law would not allow BCBS to amend the insurance policy after it's issuance to reduce the benefits provided for these medical expenses without a signature from the insured. As a result, BCBS continues to threaten the use of later policy amendments to deny coverage, but has not actually ever denied coverage contending that the policy coverage could actually be changed, as they contended, at least since the prior suit was concluded in December of 2018.

**ANSWER:**   HCSC denies the allegations in Paragraph 39.

40.     Mr. and Mrs. Blaik have never signed any endorsement that would reduce the coverage for ABA therapy under this insurance policy and, if A.B.'s medical expenses for ABA therapy were ever covered under this insurance policy as found by this Court, then they are still covered. BCBS is deemed to know the applicable law and, if they are denying any coverage for A.B.'s ABA therapy based upon any later amendment to this insurance policy, then such conduct is improper.

**ANSWER:**   HCSC denies the allegations in Paragraph 40.

41.     A.B.'s medical expenses for her ABA therapy are entitled to indemnification under this insurance policy for the same reasons, under the same policy provisions, that this Court found in February of 2018, on careful examination of the same.

**ANSWER:**   HCSC denies the allegations in Paragraph 41.

42.     BCBS has finally paid benefits for indemnification of some of A.B.'s medical expenses for ABA therapy in recent months and does not claim, against her personally, that any amendments or changes to the policy since this Court's ruling have somehow diminished her coverage under their insurance policy with these Plaintiffs. BCBS has not reasserted this improper excuse for denial.

**ANSWER:**   HCSC admits that BCBSOK paid the allowed amount for certain claims for payment for ABA therapy provided to A.B., but denies the remaining allegations in Paragraph 42.

43.     On information and belief, BCBS has acted by endorsement to restrict their policy coverage for all other persons with the diagnosis of autism, the principal diagnosis for which ABA therapy is provided, to only the minimum requirements mandated by Oklahoma law for such ABA therapy. For all other diagnoses of any kind, such as A.B.'s diagnosis, BCBS continues to deny all claims from all Oklahoma children for all ABA therapy on the basis that it is experimental and investigational. BCBS continues in these denials for all Oklahoma children despite the fact that ABA therapy is taught and given graduate level and masters level degrees by our universities of higher education, is

21

approved and monitored for different medical licensure levels by the State medical authorities across the country, and is actually a mandated health insurance benefit in at least 46 states.

**ANSWER:**   HCSC denies the allegations in Paragraph 43.

44.     On information and belief, A.B.'s medical expenses for ABA therapy would be denied by BCBS altogether as a matter of course by BCBS, as experimental and investigational, at this time due to the fact that it involves a diagnosis other than autism, except for this ruling of coverage for A.B.'s ABA therapy by this Court in her previous case.

**ANSWER:**   HCSC denies the allegations in Paragraph 44.

45.     Although BCBS knows this Court's ruling that ABA therapy is provided coverage by the terms of this policy, BCBS continues to improperly deny coverage for ABA therapy to all children in Oklahoma receiving this therapy, other than those receiving the therapy for autism and, improperly restricts payment for ABA therapy to children with autism to the state mandated minimum requirements, even though they know that the policy language already provided broader benefit coverage for ABA therapy, per this Court's ruling. BCBS knows that their restriction of ABA therapy benefits by endorsement to the state mandated minimum is improper for all ABA therapy claims in Oklahoma that they receive under this plan language and knows that their continued denial of ABA therapy for any children with diagnoses other that autism is similarly improper.

**ANSWER:**   HCSC denies the allegations in Paragraph 45.

46.     This institutional denial and restriction of coverage for ABA therapy for all Oklahoma children has affected and determined the handling of A.B.'s claims, as more fully described below.

**ANSWER:**   HCSC denies the allegations in Paragraph 46.

47.     There is no legitimate reason for any contention that ABA is experimental and investigational when, for years, our institutions of higher learning have offered degree programs and post-graduate degree programs offering degrees at doctorial levels for such health care providers, most or every state in the union has mandated health insurance coverage for autistic children requiring this therapy, and for many years the state medical authorities have approved, regulated and licensed the utilization of these health care providers to provide this important health care in our nation.

**ANSWER:**   HCSC denies the allegations in Paragraph 47.

48.     From the time of A.B.'s birth and initial ABA treatments in 2011 until the time of this Court's Order finding coverage in February of 2018, BCBS never paid a dime on any ABA expenses incurred by Mr. and Mrs. Blaik. From the time of this Court's Order in February of 2018 until October of 2019, BCBS never honored and paid any claims for indemnification of A.B.'s medical expenses for ABA therapy.

**ANSWER:**   HCSC denies the allegations in Paragraph 48.

49.     Between the time of this Court's Order in February of 2018 and the Administrative Closing Order in that case in December of 2018, Will and Sherri Blaik had their ABA medical provider regularly submit their medical expenses to BCBS for indemnification, but those claims were ignored by BCBS.

**ANSWER:**  HCSC admits that therapy providers employed by Therapy and Beyond submitted claims for payment for ABA therapy sessions between June 2018 and December 2018 to BCBSOK, but denies the remaining allegations in Paragraph 49.

50.     By agreement, BCBS does not owe these Plaintiffs any indemnity of A.B.'s medical expenses incurred prior to this Court's final hearing in the previous case on April 5, 2019. Since that date, A.B. has continued to receive extensive ABA therapy recommended by her ABA providers, approximately 40 hours per week, most weeks. Throughout that time, since April 5, 2019, A.B.'s medical providers for ABA therapy have consistently provided billings and claims to BCBS on the Blaik's behalf for A.B.'s regular ABA therapy treatment. On information and belief, these claims were regularly submitted to BCBS by the medical provider on a weekly or bi-weekly basis. The ABA therapy providers have, likewise, appealed claim denials, worked with BCBS in their review and "management" of A.B.'s medical care, and, otherwise, responded to and promptly provided any information requested by BCBS in connection with their handling of these ABA treatment claims under this insurance policy.

**ANSWER:**  HCSC admits the first sentence of Paragraph 50. HCSC further admits that, since April 5, 2019, A.B.'s ABA therapy providers have submitted claims for

payment, but denies that the submitted claims were timely, complete, accurate, or complied with either A.B.'s insurance contract or the providers' contracts with BCBSOK. HCSC denies the remaining allegations in Paragraph 50.

51.     The Defendant has improperly and intentionally delayed payment, ignored the claims altogether, refused payment, and otherwise breached their obligations under this insurance policy as detailed herein.

**ANSWER:**   HCSC denies the allegations in Paragraph 51.

52.     Sherri Blaik is the person that coordinated the submission of the insurance claims with the medical providers providing A.B.'s ABA therapy and otherwise handled the insurance claims with BCBS in an attempt to have them honor the indemnification benefits provided by the policy. Between April and October of 2019, despite regular submissions of these ABA medical expenses claiming benefits with BCBS, Sherri Blaik could not garner any claim response of any kind from BCBS.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 52, and on that basis denies them. HCSC denies the remaining allegations in Paragraph 52.

53.     The Defendant's actions during that time and refusal to respond in any fashion were intentionally designed to try and coerce and force A.B.'s medical providers to lessen and compromise the medical care which those medical providers truly believed and recommended were appropriate for A.B.'s treatment.

**ANSWER:**   HCSC denies the allegations in Paragraph 53.

54.    BCBS's breaches of the insurance policy and breaches of the implied covenant of good faith and fair dealing, as set forth in more detail herein, principally involve completely ignoring and refusing to properly address at all claims for A.B.'s ABA therapy from April 2019 until October 2019, followed by continuing denials of ABA therapy without any explanations for the denials and then, outright denials and refusal to cover anything more than 15 hours of ABA therapy beginning in April 2020.

**ANSWER:**   HCSC denies the allegations in Paragraph 54.

55.    The exact details of all ABA claims submitted to BCBS and what it is that BCBS was doing and ignoring in response to the same are details that are known only to the Blaik's insurance company, the Defendant, BCBS. The Blaiks will need discovery from BCBS in order to know the details of BCBS's actual conduct in the handling of their insurance claims, but the Defendant, BCBS, knows these details. Mr. and Mrs. Blaik contend that, in the context of causes of action based upon the Defendant's handling of their insurance claims, it is improper for their insurance company, that is in possession of those details, to complain about the lack of detail that the Blaiks have from their insurance company about the specifics of BCBS's conduct in ignoring and denying their insurance claims. BCBS refused them any explanation as to why they were refusing the Blaiks any response and then complained that the Blaiks did not detail why BCBS was refusing to address all their claims. It is the Defendant that knows and is in possession of all of the

details and documentation of what claims and why they ignored them and all pertinent events that transpired in the handling of these claims. Only BCBS knows these details.

**ANSWER:**   HCSC denies the allegations in Paragraph 55.

56.     Mr. and Mrs. Blaik claim that BCBS's unreasonable delays and completely unjustifiable refusal to respond to the Blaiks <u>at all</u> with respect to A.B.'s ABA therapy claims from April 2019 to October 2019 was intentionally designed to attempt to pressure her ABA medical providers into providing a lesser level of care than was medically necessary. Consistent with their refusal to honor this Court's Order following the ruling in February 2018, consistent with their recent decisions to refuse any treatment over 15 hours per week and consistent with their repeated harassment and insistence with A.B.'s ABA medical providers throughout these months, BCBS's conduct is intentionally designed to force and coerce these medical providers from properly exercising their medical judgment to determine the appropriate medical care for A.B.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in the first sentence of Paragraph 56. To the extent a response is required, HCSC denies the allegations in the first sentence of Paragraph 56. HCSC denies the remaining allegations in Paragraph 56.

57.     Defendant repeatedly breached the insurance contract by delaying, failing and refusing to properly and promptly approve and pay policy benefits to Plaintiffs as detailed below.

**ANSWER:**   HCSC denies the allegations in Paragraph 57.

58.     Defendant breached the implied covenant of good faith and fair dealing in the handling of Plaintiffs' claims, as detailed below, and as a matter of routine claim practice in handling similar claims, by:

a.      failing and refusing payment and other policy benefits at a time when Defendant knew that Plaintiffs were entitled to those benefits;

b.      failing to properly investigate Plaintiffs' claims and to obtain additional information both in connection with the original refusals and following the receipt of additional information;

c.      withholding payment of the benefits on behalf of Plaintiffs knowing those claims for those benefits were valid;

d.      refusing to honor Plaintiffs' claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.      refusing to honor Plaintiffs' claims in some instances by applying restrictions not contained in the policy;

f.      refusing to honor Plaintiffs' claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Plaintiffs' claims;

h.      not attempting in good faith to effectuate a prompt, fair and equitable settlement of A. B.'s claims once liability had become reasonably clear;

i.      forcing Plaintiffs, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

j.      failing to properly evaluate any investigation that was performed;

k.      knowingly construing the policy wording to restrict coverage in a manner different than BCBS knows this policy is designed, written and marketed to promise much broader coverage under this policy language;

l.      refusing to consider coverage for payment objectively in the best interest of their insured rather than the interest of only the insurance company;

m.     intentionally failing and refusing to follow the known law of policy construction, including, but not limited to, resolving any contractual ambiguities in favor of their insured;

n.      imposing conditions and requirements for coverage more restrictive than the requirements of the policy;

o.      unreasonably delaying the payment of policy benefits, including delays and refusals to pay with the specific intent that it interferes with and prevent necessary medical care for A. B. in order to reduce the applicable policy benefits that would otherwise be payable for such care; and,

p.      attempting to force a lessened level of care for A. B. in order to minimize the policy benefits payable under her policy;

all in violation of the covenant of good faith and fair dealing and resulting in financial benefit to BCBS.

**ANSWER:**   HCSC denies the allegations in Paragraph 58.

29

59.     Following the resolution of the previous lawsuit, A.B. continued to receive her ABA therapy treatment for covered dates in April 2019 for at least 4/8, 4/9, 4/12, 4/16, 4/18, 4/23, 4/25, 4/26 and 4/30, 2019. On best information and belief these claims were submitted to BCBS by her ABA therapy provider, Therapy and Beyond, beginning on 4/22/2019.

**ANSWER:**   HCSC admits that BCBSOK received claims for payment for ABA Therapy provided to A.B. on the following dates: April 8, 2019, April 9, 2019, April 12, 2019, April 16, 2019, April 18, 2019, April 23, 2019, April 25, 2019, April 26, 2019, and April 30, 2019. HCSC denies the remaining allegations in Paragraph 59.

60.     Plaintiffs believe that Therapy and Beyond continued to submit continuing billings for A.B.'s ABA therapy treatment to BCBS, at least bi-weekly, for May, June, July, August, September, and October. ABA therapy services for A.B. by Therapy and Beyond in May 2019 were on 5/1, 5/2, 5/7, 5/8, 5/9, 5/14, 5/16, 5/21, 5/22, 5/23, 5/24, 5/28, 5/29, 5/30, 5/31.

**ANSWER:**   HCSC admits that BCBSOK received claims for payment for ABA Therapy provided to A.B. on the following dates: May 1, 2019, May 2, 2019, May 7, 2019, May 8, 2019, May 14, 2019, May 16, 2019, May 21, 2019, May 22, 2019, May 23, 2019, May 24, 2019, May 28, 2019, May 29, 2019, May 30, 2019, and May 31, 2019. HCSC denies the remaining allegations in Paragraph 60.

61.    In June 2019, A.B. continued to receive regular ABA therapy treatment and Therapy and Beyond continued to send regular medical billings to BCBS that involved her current treatments in June for 6/4, 6/5, 6/6, 6/12, 6/13, 6/18, 6/19, 6/21, 6/25, 6/26 and 6/27.

**ANSWER:**    HCSC admits that BCBSOK received claims for payment for ABA Therapy provided to A.B. on the following dates: June 4, 2019, June 5, 2019, June 6, 2019, June 12, 2019, June 13, 2019, June 18, 2019, June 21, 2019, June 25, 2019, June 26, 2019, and June 27, 2019. HCSC denies the remaining allegations in Paragraph 61.

62.    By at least June 2019, Sherri Blaik became very concerned about the coverage for A.B.'s ABA therapy. She had determined with Therapy and Beyond that the ABA therapy bills had been submitted to BCBS for payment beginning on April 22, 2019 and continuing at regular times, at least bi-weekly or monthly thereafter. She inquired and learned that there were laws and regulations that required prompt response on insurance claims and, at least, acknowledgment letters to confirm receipt of insurance claims giving explanation, if immediate prompt payment was not forthcoming. She knew that BCBS had routinely ignored such legal requirements in the past, and had no reason to gauge whether or not it was just a routine BCBS claim delay or whether they were going to continue to refuse insurance payments for her daughter's ABA treatments. For ten (10) years, BCBS had not honored any of A.B.'s claims for ABA therapy.

**ANSWER:**    HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 62, and on that basis denies them. Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik

for themselves individually," HCSC has no obligation to respond to the remaining allegations in Paragraph 62. To the extent a response is required, HCSC denies the remaining allegations in Paragraph 62.

63.     Mrs. Blaik was checking the BCBS website for her account and saw that a 06/06/2019 ABA therapy treatment was denied but no other indication of any claims existing at all. All of the other pending claims were missing from the BCBS claim denial pages.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 63, and on that basis denies them.

64.     On June 22, 2019, Sherri Blaik contacted Therapy and Beyond and confirmed that they had not seen or heard anything from BCBS with respect to the claims that had been submitted on April 22, 2019 or on any of the other billings submitted in the following weeks to BCBS in connection with the ABA therapy. Mrs. Blaik knows now that BCBS had these claims for these dates of services because they were eventually processed by BCBS in October, but she, nor Therapy and Beyond, never received any acknowledgment, response or indication of any kind from BCBS to confirm anything about what they were doing or why they were wholly ignoring these claims. Only BCBS knows these facts.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 64, and on that basis denies them. HCSC denies the remaining in Paragraph 64.

65.     In the June 22, 2019 call, Therapy and Beyond began to question Mrs. Blaik whether arrangements needed to be made for private payment and expressed concern about BCBS's refusal to even acknowledge receipt of the same. The medical providers thought BCBS would never honor payment on this contract.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 65, and on that basis denies the same.

66.     BCBS had previously designated a representative at the company for the Blaiks to contact with regard to their policy and Mrs. Blaik asked Mark Engel to write a letter to the designated representative. The letter dated June 27, 2019, to Douglas Sondgeroth at Health Care Service Corporation, recites that he was listed as the person Plaintiffs could notify in the event of problems with future claims. The letter recites that Therapy and Beyond had submitted claims for A.B.'s ABA therapy beginning on April 22, 2019 and that they had not received any response from BCBS of any kind. The letter recites that on page 60 of the policy it states that a benefit determination will be made within thirty (30) days. The letter states that it has now been over sixty (60) days and the Blaiks have not received any response of any kind on these claims. The letter notes that these were the first ABA claims submitted after the resolution of the prior lawsuit and that this is a cause of much concern for the Blaiks. The letter asks Mr. Sondgeroth to check on the processing of the claims and give a status update. This was a cause for much concern for Mr. and Mrs. Blaik because BCBS had never honored ABA therapy claims in the past ever and BCBS had previously ignored a Federal Court Order and asserted that recent amendments or

changes to their policy may have somehow reduced or changed their coverage and taken their benefits from them.

**ANSWER:**   HCSC admits that Mark Engel sent a letter to Douglas Sondgeroth dated June 27, 2019, and refers the Court to that letter for its complete and accurate contents. HCSC denies the remaining allegations in Paragraph 66.

67.    Mrs. Blaik was worried about whether any coverage would ever be provided and began a review of the prior briefings related to subsequent amendments and the BCBS contention that they could reduce and take away anyone's policy benefits on a contract that was already in force. Mrs. Blaik began a query as to whether or not years of litigation was going to start all over again.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 67. To the extent a response is required, HCSC lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 67, and on that basis denies them.

68.    On July 10, 2019, Mr. and Mrs. Blaik received a response that was to be their only and last indication of any kind on these claims from April to October 2019. Mr. Sondgeroth wrote Mark Engel and indicated that it was his understanding that the ABA claims were still pending because "additional clinical information" from Mrs. Blaik's medical providers was needed. The email did verify that BCBS was also considering other continuing recent claims submitted by Therapy and Beyond since the original April 2019

34

claims. Mr. Sondgeroth indicated that it was his understanding that a letter identifying the needed information for the April claims and other recent claims was sent to Therapy and Beyond earlier this week. Since the inquiry letter had been sent on June 27, 2019, it was clear that BCBS was claiming that they first requested some additional information after receipt of the letter indicating that they were over sixty (60) days without any response. Mr. Sondgeroth was claiming that, in response to the inquiry on delayed payment, they had sent a request for more information and that is why the claims were pending. The letter did not proffer any explanation or response as to why the benefit determination had not been made within thirty (30) days as provided in the policy or why it had been over sixty (60) days and a letter from an attorney before they had taken any action at all.

**ANSWER:**   HCSC admits that, on July 10, 2019, Mr. Sondgeroth sent an email to Mark Engel, and refers the Court to that email for its complete and accurate contents. HCSC denies the remaining allegations in Paragraph 68.

69.   In response, Sherri Blaik followed up with Therapy and Beyond who indicated that they had never received any response, inquiry, acknowledgment, or normal response of any kind from BCBS relative to A.B.'s therapy claims. Mrs. Blaik waited another week to see if the letter referenced by Mr. Sondgeroth or any other communication of any kind from BCBS might be received by herself or by Therapy and Beyond. But, again, there was never going to be any further communication or indication of any kind for Mrs. Blaik before October 2019. His letter was false and Mr. and Mrs. Blaik could never garner another response of any kind.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first and second sentences of Paragraph 69, and on that basis denies them. HCSC denies the remaining allegations in Paragraph 69.

70.    On July 23, 2019, Mark Engel again wrote Mr. Sondgeroth, BCBS's designated representative, explaining that there were specific time requirements under the law for the proper processing of health insurance claims and that it was required for the health and safety of patients. Some of these claims were from April and May. Not properly and promptly paying medical claims can affect treatment decisions. Mr. Sondgeroth was informed that, if any information was really needed, then someone needed to be on the phone getting it immediately. The letter explains that BCBS has never paid, ever, for this child's ABA therapy, even after an Order from a federal judge finding coverage and that it was a cause of much concern. The email states that this is not an ordinary delay on just another claim, but a matter of these people not knowing whether coverage is ever going to be honored at all – again. The email states that the continued delay could affect decisions for A.B.'s treatment. The parents are asking what they are supposed to do and there is no answer if BCBS refuses to properly advise and process the claim. The letter asks how long it was supposed to take for BCBS to simply tell the Blaiks that they do intend to or do not intend to start paying for A.B.'s ABA therapy. This was four (4) months after BCBS should have been paying.

**ANSWER:**   HCSC admits that Mark Engel sent Douglas Sondgeroth an email on July 23, 2019, and refers the Court to that email for its complete and accurate contents. HCSC denies the remaining allegations in Paragraph 70.

71.     On July 24, 2019, Mrs. Blaik confirmed again that neither her, nor Therapy and Beyond, had ever received any request for information or, acknowledgment, or documentation responsive to the claims at all. Mark Engel wrote Mr. Sondgeroth another email stating that Therapy and Beyond had never received any information request mentioned in his July 10, 2019 email and is unaware of BCBS needing anything. BCBS was informed that Mr. and Mrs. Blaik had not been copied on any requests for any information. What information could they possible need? It was the BCBS email that simply stated, "additional clinical information". The email notes that BCBS has thousands of pages of medical documentation and doctor testimony as to this child's "clinical information". BCBS is either going to pay for her ABA therapy or they are not. What is the problem with providing a response?

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 71, and on that basis deny them. HCSC further admits that Mark Engel sent Douglas Sondgeroth an email on July 24, 2019, and refers the Court to that email for its complete and accurate contents. HCSC denies the remaining allegations in Paragraph 71.

72.     Mrs. Blaik continued to check with Therapy and Beyond and on the BCBS website for her account which normally gives information on health insurance claims, but

these ABA therapy claims continued to be wholly ignored and unreported and did not even appear to exist. On July 23, 2019, Mrs. Blaik found a single document on the computer in the BCBS Claims Center – Claim Detail. The page indicated a claim in the amount of $650 with the date of service of June 6, 2019, with Therapy and Beyond, and it indicated that the status of the claim was "Not Paid". The claim detail for this single date of service indicated that the EOB document for this claim was not available at this time and it did not provide any explanation for the denial of the claim. The computer page simply indicates that you would have to try again later to view the actual Explanation of Benefits document for that claim. Mr. and Mrs. Blaik feared that all of these ABA therapy claims had already been denied coverage and their EOB's and documentation removed from the computer and normal processing. Only BCBS knows what was happening over the months as they steadfastly refused to give the Blaiks any response or any indication of any kind with respect to what they were doing and what they did. BCBS obviously was not even listing the claims at all on their computer account information.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first six sentences of Paragraph 72, and on that basis denies them. HCSC denies the remaining allegations in Paragraph 72.

73.    With thousands of dollars of ABA medical bills per month stacking up for the dates of service listed above, Mr. and Mrs. Blaik became concerned, again, about securing proper treatment for their daughter. They considered whether years more of

litigation could ever compel BCBS to simply honor their policy obligations and pay for the treatment they sought to ensure on the day their daughter was born.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 73. To the extent a response is required, HCSC lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 73, and on that basis denies them.

74.    The Blaiks were aware that BCBS's President and Chairman of the Board, Dr. Cunningham, had testified in 2019 that BCBS was not paying benefits for any Oklahoma child's ABA therapy treatment in the State of Oklahoma unless they carried a diagnosis of autism. Dr. Cunningham testified that, due to the legislature's mandate of ABA therapy treatment for children with autism, BCBS was amending their policies to provide the minimum amounts mandated by the legislature. Since Dr. Cunningham was indicating that the ABA therapy benefits were being reduced, even for autistic children, Mr. and Mrs. Blaik knew that BCBS was taking the position that they could alter, reduce, and change someone's already existing health insurance contract unilaterally. In fact, Mr. and Mrs. Blaik knew that BCBS had done just that for all Oklahoma children receiving ABA therapy, since this Federal Court had determined that the ABA therapy should be covered under the policy language generally without these added restrictions. Mr. and Mrs. Blaik knew BCBS had argued that BCBS could unilaterally change the policy in their case.

**ANSWER:**   HCSC admits that Dr. Cunningham was deposed in a prior lawsuit involving A.B. and refers to the transcript of his deposition for the contents thereof, but HCSC denies the remaining allegations in Paragraph 74.

75.     Dr. Cunningham and multiple BCBS medical directors had testified that BCBS still considered ABA therapy experimental and investigational. For that reason, Dr. Cunningham, BCBS's chief officer, had testified in 2019 following the Federal Court Order that BCBS was not going to provide ABA benefits for any Oklahoma child, except for those that were receiving ABA therapy for autism where it was mandated by the Oklahoma legislature. Dr. Cunningham confirmed that BCBS was going to deny ABA benefits to all other such children, irrespective of this Court's February 2018 Order. In fact, Dr. Cunningham testified that he may not have even read the Order and was not concerned about what it had to say about coverage under the BCBS policy.

**ANSWER:**   HCSC admits that Dr. Cunningham was deposed in a prior lawsuit involving A.B. and refers to the transcript of his depositions for the contents thereof, but HCSC denies the remaining allegations in Paragraph 75.

76.     The odd lack of any normal response and any effort to promptly address what were conspicuously overdue claims, despite the attorney's inquiries, caused Mr. and Mrs. Blaik to believe that BCBS did, indeed, intend to deny them any ABA benefits altogether. Then, on August 19, 2019, they received their first EOB from BCBS relative to any of these long overdue multiple ABA claims. This EOB contained just a single date of service and appeared to be the same June 6, 2019 EOB which was missing from the Claim Center

Claim Detail on the computer earlier. This EOB was mailed to Mr. and Mrs. Blaik at their home address and was the first and only response or indication of any kind ever received from BCBS to date with regard to the pending ABA claims. The $650 ABA billing claimed was denied with standard BCBS language stating only "(1) This expense/service is not covered under the terms and conditions of your Health Care Plan. No payment can be made." Again, it appeared that this single claim had slipped through the cracks and not been pulled from the normal claim information available on the computer or normal processing, just like all of the Blaik's other missing ABA claims. It appeared to be confirmation that BCBS was going to deny their policy coverage again.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in the first sentence of Paragraph 76. To the extent a response is required, HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 76, and on that basis denies them. HCSC further admits that A.B. was sent an explanation of benefits with a service date of June 6, 2019, and refers the Court to that explanation of benefits for its complete and accurate contents. HCSC denies the remaining allegations in Paragraph 76.

77.     As usual, BCBS's explanation for why the coverage is denied offers no detail or real explanation as to the basis for denial of the coverage. An insured cannot dispute or appeal a claim denial and, for example, dispute whether or not these services are experimental/investigational, if BCBS gives no real reason for the denial. Pursuant to their

normal claims practices, BCBS just says the expense/service is not covered under the terms and conditions of the plan without citing any involved term or condition. Insureds cannot meaningfully dispute claim denials with their insurance company if the insurance company fails to even advise them of the true basis for the denial.

**ANSWER:** HCSC denies the allegations in Paragraph 77.

78.     By this time in August, Mr. and Mrs. Blaik had incurred medical charges with an outstanding amount of $44,650 at Therapy and Beyond for their daughter's ABA treatment. Of course, BCBS is obligated for much less, but only if they cover the expenses. Mr. and Mrs. Blaik faced decisions about her ongoing treatment believing that BCBS would refuse to honor their contract, just as they had testified they would normally do for such a claim on any other Oklahoma child. The one date of service and EOB that appeared to have slipped through the cracks confirmed such denial. Additionally, there was no justifiable explanation for why BCBS would refuse entirely to have addressed all of their other claims in any respect for these months, then falsely indicated that they had recently submitted a request for information and, then, refused to respond and quit responding at all to their repeated inquiries. There was no rational reason for a complete refusal to respond at all.

**ANSWER:** HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 78, and on that basis denies them. Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in the

42

third sentence of Paragraph 78. To the extent a response is required, HCSC denies the allegations in the third sentence of Paragraph 78. HCSC denies the remaining allegations in Paragraph 78.

79.     Therapy and Beyond through these weeks engaged Mrs. Blaik in conversations about what could be done about the outstanding balance, what the arrangement was going to be going forward with their daughter's treatment and whether or not BCBS's refusal to address these claims would effect what they were able to do for treatment of their daughter. Mr. and Mrs. Blaik knew that BCBS had no regard for a Federal Court's Order, no regard for the legal requirements for the prompt processing of health insurance claims, and knew that BCBS was refusing them even the common decency of a response letter to simply say yes we are working on your claim or no we are not going to pay for ABA therapy for this child. Obviously, there is no justifiable basis for such a simple determination or response of any kind to have taken six (6) months. Mr. and Mrs. Blaik knew Dr. Cunningham's testimony of his lack of any regard for the Federal Court's Order. BCBS had had multiple prior years to thoroughly review and garner thousands of pages of documentation concerning this child and her medical care with ABA therapy. BCBS had deposed her ABA providers for hours and could not possibly have needed five (5) more months to investigate and determine coverage for her ABA claims.

**ANSWER:**  HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 79, and on that basis denies them. Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik

for themselves individually," HCSC has no obligation to respond to the allegations in the second sentence of Paragraph 79. To the extent a response is required, HCSC denies the allegations in the second sentence of Paragraph 79. HCSC denies the remaining allegations in Paragraph 79.

80.     BCBS's refusals to honor coverage, their extended delays in processing these claims, and their outright denial of decency in refusing to even answer and respond in any fashion is not only unjustifiable. These actions were also intentional and pursuant to a design to force Mr. and Mrs. Blaik and A.B.'s medical providers into decisions to compromise and restrict A.B.'s medical care to some level that would be cheaper for BCBS to pay. The requirements for successful treatment for A.B. were approximately 40 hours per week, which was a little above the mandated minimum standards required by the legislature for autistic children in the normal course of administering this intensive therapy regimen. Plain and simply, BCBS was willing to ignore their obligations under the insurance policy for prompt payment, ignore their obligation of good faith and fair dealing under the policy to their insureds, and to bully Mr. and Mrs. Blaik and their medical providers into altering their decisions for this child's treatment with their brazen disregard of the pending ABA claims.

**ANSWER:**   HCSC denies the allegations in Paragraph 80.

81.     With now four (4) communications that had been completely ignored for any appropriate response, Mrs. Blaik requested Mark Engel write Mr. Sondgeroth again in an email dated August 21, 2019. It was noted to Mr. Sondgeroth that it had been many weeks

since this problem had been brought to his attention and that he was the designated representative to avoid such mishandling. Again, the point was made that BCBS is either going to start paying for this child's ABA therapy or they are not. No matter what the cause of the delay, BCBS should be able to simply indicate whether their position is going to be that ABA therapy for this child's diagnosis is covered under the policy or it is not. The email notes that we now have the one isolated denial EOB, with BCBS's standard lack of any real explanation for the basis of the denial, and still no response for all the claims that were months old. It was explained that Mr. and Mrs. Blaik were asking about the refusal to provide any response at all and that there was no justifiable explanation that could be provided for the same. BCBS was asked whether or not this was retribution for these insured having sued BCBS earlier. If BCBS was going to cover ABA therapy for this child, then what purpose was being served by their refusal to acknowledge these emails or claims at all? Plaintiffs asked BCBS to provide us any information as to what Mrs. Blaik was supposed to tell these ABA therapists about their outstanding medical bills and what they should do going forward. How many more months does BCBS intend to simply ignore these claims? Why do they not have to comply with the law or respond to our inquiries at all?

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 81, and on that basis denies them. HCSC admits that Mark Engel sent Douglas Sondgeroth an email on August 21, 2019, and

refers the Court to that email for its complete and accurate contents. HCSC denies the remaining allegations in Paragraph 81.

82.     September 4, 2019 was the service date of another EOB that was sent to Mrs. Blaik similar to the June 6, 2019 EOB. The Therapy and Beyond medical visits for the service date of September 4, 2019 in the amount of $500 and $375 were both denied with the explanation "This expense/service is not covered under the terms and conditions of your Health Care Plan. No payment can be made." Again, there was no indication as to why a denial was made for these particular ABA services while five (5) months of service dates were still being ignored and the Blaiks could garner no response from BCBS. Again, the explanation for denial gives no real indication of any kind to the insured, by design, to prevent any meaningful dispute in appeal of the denial. The Blaiks could not garner any response from BCBS as to whether there was ever going to be payment of any of these ABA treatments but, at least for these two dates of treatment, they had these written denials and continued without any information as to the multitude of other claims that were simply being delayed and ignored. The Therapy and Beyond ABA claims were completely pulled and missing from the normal BCBS account information.

**ANSWER:**   HCSC admits that A.B. was sent an explanation of benefits with a service date of September 4, 2019, and refers the Court to that document for its complete and accurate contents. HCSC denies the remaining allegations in Paragraph 82.

83.     During September and/or October of 2019, Mrs. Blaik began hearing from Therapy and Beyond that BCBS was contacting them to review a treatment plan and appear

to be finally considering coverage for A.B.'s ABA therapy treatments or pretending to consider them. A.B.'s medical providers indicated that their therapists were being pressured to agree to just 25 hours per week, instead of the 40 hours per week, conditioned upon BCBS favorably viewing coverage for their medical services. These exchanges only verified what Mr. and Mrs. Blaik had initially feared. BCBS was refusing any payment to Therapy and Beyond at all and delaying any response to the long overdue claims in an effort to pressure her therapists into agreeing to some level of care less than what the medical providers truly knew was appropriate for their child. This appeared to be the only rational explanation for BCBS's complete refusal to honor the Blaiks with any response at all to their multiple written inquires.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 83, and on that basis denies them. HCSC denies the remaining allegations in Paragraph 83.

84.     By October 21, 2019, BCBS indicated that they were going to make payment on many of the long overdue claims approving a six (6) month period from April 2019 through October 15, 2019. However, as BCBS continued to negotiate these claims with Therapy and Beyond, they indicated that authorization for payment of any of their therapy services after October 15, 2019 were still not approved. BCBS continued to threaten no coverage at all, negotiate for reduced coverage, and had deadlines expiring for their belated authorization, prior to ever having made any payment on any claim for A.B. BCBS extended their authorization on a solely "temporary" basis from October 15, 2019 to

October 30, 2019, again, not specifying what action they intended to take if Therapy and Beyond would not consent to their restrictions and denials of more extensive treatment for A.B.

**ANSWER:**   HCSC admits that BCBSOK paid certain claims for ABA therapy provided to A.B. between April 2019 and October 25, 2019, but denies the remaining allegations in Paragraph 84.

85.    On October 21, 2019, Mrs. Blaik received a large stack of EOBs making payment for A.B.'s ABA therapy for the first time ever. However, she was aware that any future coverage was continuing only under the threat of a "temporary" authorization that extended only to October 30, 2019. Additionally, the claim information that she could gather from the Blue Cross Blue Shield website now appropriately listed all of the pending ABA therapy claims that had been omitted from her account information on the BCBS website previously. While most of the dates of services listed now indicated that they had been paid, there were four (4) (in addition to the two (2) that had been previously denied) that indicated they were "Not Paid". These four (4) claims included a service date of May 14, 2019 in the amount of $575, May 1, 2019 in the amount of $1,350, April 25, 2019 in the amount of $550 and April 16-18, 2019 in the amount of $450. BCBS had not provided any explanation of benefits for these four (4) claims and, again, had not identified any specific basis for why they were not paid.

**ANSWER:**   HCSC admits that A.B. was sent a number of explanations of benefits related to ABA therapy claims on October 15, 2019, including for services provided to

A.B. on April 16-18, 2019, April 25, 2019, May 1, 2019, and May 14, 2019. HCSC also admits that duplicate claims were submitted on April 16-18, April 25, May 1, 2019, and May 14, 2019. HCSC denies the remaining allegations in Paragraph 85.

86.     On October 23, 2019, the Blaiks brought this lawsuit. After six (6) months, BCBS had still never responded to their inquiries, had still not determined whether or not they could approve payment for A.B.'s continuing ABA therapy, were threatened to have the "temporary" authorization end in one week, and they knew that the unjustifiable delays and intentional refusal to promptly and properly address their claims was being utilized to try and force A.B.'s medical providers to compromise the medical care that her medical providers had determined was medically necessary and appropriate for A.B.

**ANSWER:**   HCSC admits that Plaintiffs filed the initial complaint on October 23, 2019, but denies the remaining allegations in Paragraph 86.

87.     The filing of the lawsuit on October 23, 2019, at least, caused BCBS to discontinue pressuring A.B.'s medical providers for a short time. For the pending October 30, 2019 cut-off deadline, BCBS extended authorization for the requested 40 hours of ABA therapy recommended by her professionals until further review. For the first time in A.B.'s life, the Blaik's ABA therapy claims were honored by BCBS in a normal course as the health insurance claims were submitted by Therapy and Beyond. There was no definitive threat for cut off, although BCBS indicated they would review it again at least within six (6) months. Mr. and Mrs. Blaik wondered if BCBS was finally going to honor their child's health insurance coverage for the care determined necessary by her medical providers

going forward or whether they were going to be forced to endure similar unjustifiable treatment in the future.

**ANSWER:**  HCSC denies the allegations in the first sentence of Paragraph 87. HCSC admits that BCBSOK sent A.B. a letter regarding ABA therapy for the period between October 26, 2019 and April 26, 2020, and refers the Court to that letter for its complete and accurate contents. HCSC denies the remaining allegations in Paragraph 87.

88.    Within a few short months, the Blaiks began experiencing denied ABA therapy claims again. Of course, they were involved in litigation with BCBS by this time, by rule could not have any discovery from BCBS relative to these denials and, could only garner the information available on their BCBS member account and could only refer these denied claims to Therapy and Beyond to address with BCBS.

**ANSWER:**  HCSC denies the allegations in Paragraph 88.

89.    As they await the discovery period to begin in their lawsuit, the Blaiks cannot know which of these claim denials have been satisfactorily resolved between BCBS and Therapy and Beyond, what the real basis is for the denials so that they could evaluate the same or have the benefit of more extended information from their insurance company other than what BCBS has chosen to advise its insureds in their normal handling of these claims. Only BCBS knows the handling on the following denied claims other than what their EOB states. All these denials are improper because ABA therapy is covered by the policy as detailed by this Court. There were Therapy and Beyond service dates of November 22, 2019 and November 27, 2019 that were processed on January 6, 2020 with indications that

amounts of $1,050, $250, and $62.50 were denied because "This expense/service is not covered under the terms and conditions of your Health Care Plan. No payment can be made". There were service dates of November 19, 2019 and November 21, 2019 processed on January 3, 2020 with an explanation of benefits denying medical visit expenses in the amount of $1,275 and $187.50 indicating that "the expense/service is not covered under the terms and conditions of your Health Care Plan. No payment can be made". This same nondescript explanation for denial, or lack of any real explanation for denial at all, was utilized to deny a multitude of ABA therapy visits. On information and belief, some of these claim denials were paid at a later date or otherwise resolved and some remain denied. Although authorization had not been reopened or reviewed again by BCBS, the Blaiks had still never received anything from BCBS as to whether or not they acknowledged continuing coverage for A.B.'s ABA therapy treatments and the EOBs sent to them provide no information to explain the continuing denials from BCBS. The Blaiks had no way to know whether the denials involved retribution for having filed suit, whether BCBS was going to continue to cover the ABA treatments recommended by A.B.'s medical providers or any ability to get better information or response from their own insurance company. This generic explanation of benefits was utilized in an EOB to deny Therapy and Beyond charges with ABA service dates of April 3, 2020 in the amount of $750 and $225, April 6, 2020 in the amount of $250 and $225, all processed on April 30, 2020. An EOB denied Therapy and Beyond medical visits on February 22, 2020 and February 24, 2020 in the amounts of $300 and $850, another EOB denied medical visits with dates of service listed as February 25, 2020 in the amounts of $187.50, $500 and $1,200. An EOB denied Therapy

and Beyond medical visits with a date of service listed as February 28, 2020 in the amount of $1,050, an EOB denied medical visits with a service date of February 17, 2020 in the amounts of $312.50 and $825, an EOB denied Therapy and Beyond medical visits with service date of February 11, 2020 with billed amounts of $1,350 and $250. An EOB denied medical visits with a service date of February 18, 2020 with billed amounts of $250, $1,350 and $62.50, an EOB denied medical visits with the service date of February 6, 2020 with billed amounts of $1,050, $375 and $62.50, an EOB denied medical visits with a service date of February 20, 2020 with billed amounts of $500 and $1,125, an EOB denied medical visits with a service date of February 13, 2020 with billed amounts of $1,275, an EOB denied Therapy and Beyond medical visits with a service date of January 31, 2020 with billed amounts of $1,050 and $125, an EOB denied ABA therapy with the service date January 30, 2020 with billed amounts of $1,200 and $500, an EOB denied Therapy and Beyond ABA services with a service date of February 7, 2020 with a billed amount of $1,050, an EOB denied a medical visit with a service date of February 14, 2020 for ABA in the amount of $900, an EOB denied medical visits of February 4, 2020 in the amounts of $250, and $1,350, an EOB denied medical visits for Therapy and Beyond ABA services with a service date of February 3, 2020 in the amount of $975, EOBs with service dates of February 12, 2020, March 4, 2020, March 5, 2020, March 10, 2020, March 16, 2020, March 17, 2020 were processed on April 2, 2020 and denied billed amounts in the amounts of $600, $250, $187.50, $600, $125.78, $600, $312.50, $375, $500, $450, $750, $500, $600, $312.50, $1,000, $525, $562.50, $600 and $187.50. All of the listed claim denials were sent to Mrs. Blaik with a formal BCBS Explanation of Benefits that stated only that the

expense/service was not covered by the terms and conditions of the Health Care Plan and that no payment can be made. Again, the Blaiks were wholly unable to determine why these ABA claims were being denied when, the last they had heard from Therapy and Beyond, BCBS had at least temporarily authorized the treatment that they had determined was necessary for A.B. This applies also to an EOB with the date of service of November 26, 2019 with billed amounts of $625, $1,125, and $125, an EOB listing medical visits with service dates of February 5 and February 6, 2019 processed February 25, 2019 with billed amounts of $250, $300, $150, $250, $500, $225, $375, $150 and $150. Another EOB shows service date of November 26, 2019 with billed amounts of $625, $1,125 and $125. In general, these claim denials, even after BCBS appeared to have conceded coverage and authorization for this provider's ABA therapy treatments, advised of unexplained denials for service dates ever since the filing of the lawsuit, in November and December of 2019 and in January, February, March and April of 2020.

**ANSWER:**   HCSC admits that claims for payment for ABA therapy provided to A.B. on November 19, 2019, November 21, 2019, November 22, 2019, November 26, 2019, November 27, 2019, January 31, 2020, February 3, 2020, February 4, 2020, February 6, 2020, February 7, 2020, February 11, 2020, February 12, 2020, February 13, 2020, February 14, 2020, February 17, 2020, February 18, 2020, February 20, 2020, February 22, 2020, February 24, 2020, February 25, 2020, February 28, 2020, March 4, 2020, March 5, 2020, March 10, 2020, March 16, 2020, March 17, 2020, April 3, 2020, and April 6, 2020 were paid, and that BCBSOK sent explanations of benefits to A.B. regarding these

claims. HCSC refers the Court to those explanations of benefits for their complete and accurate contents. HCSC denies the remaining allegations in Paragraph 89.

90.     BCBS denies all such ABA treatments to all children in Oklahoma except the mandated coverage for autistic children. BCBS's President, Dr. Cunningham, confirmed that these denials are in conformance with BCBS's routine organizational denials for similar claims.

**ANSWER:**   HCSC denies the allegations in Paragraph 90.

91.     On April 6, 2020, BCBS contacted Therapy and Beyond and offered to extend their authorization for proper payment, but only if the therapists would reduce A.B.'s hours to twenty-five (25) hours of ABA therapy. This replicated what had occurred in 2019. BCBS had started denying all ABA treatments in order to pressure Therapy and Beyond into compromising their daughter's care. If BCBS is denying any payment then maybe the medical providers will reduce appropriate treatment. Therapy and Beyond resisted this suggestion and explained to BCBS the necessity of their current treatment for A.B. Of course, BCBS's representative had no knowledge of A.B.'s treatment, nor any reason to evaluate and know whether or not she needed more or less than the forty (40) hours of treatment that she was receiving.

**ANSWER:**   HCSC denies the allegations in Paragraph 91.

92.     All of these denials without any specified reason for denial and refusal to provide any reasonable response of explanation to the BCBS insureds makes all Twombley contentions entirely misplaced. In this case surrounding BCBS conduct in the handing of

the Blaik's claims, their insurance company, BCBS, knows the specifics of what occurred and in bad faith withholds that information for BCBS's tactical advantage.

**ANSWER:**   HCSC denies the allegations in Paragraph 92.

93.     Since A.B.'s therapist had disagreed with BCBS's suggestion, on April 15, 2020 BCBS contacted Therapy and Beyond and told them that they were only going to authorize fifteen (15) hours of therapy going forward. BCBS indicated that the clinical justification had not been met despite the fact that the treatment plan is extensive. BCBS did not specify or describe in any fashion what "clinical justification" it believed was missing or needed to be supplemented. BCBS had again waited until the last minute, had no justification for their denial of A.B.'s therapy beyond fifteen (15) hours, and simply refused further coverage apparently as retribution for Therapy and Beyond's refusal to agree to their suggestion of twenty-five (25) hours. A.B.'s ABA therapy beyond fifteen (15) hours a week was denied authorization and payment by BCBS going forward.

**ANSWER:**   HCSC denies the allegations in Paragraph 93.

94.     On April 21, 2020, Mrs. Blaik received a letter dated April 17, 2020 indicating that A.B.'s requested ABA therapy was denied. That letter states that the total hours per week approved was 17.25 hours, and the total hours per week denied was 29.25 hours. This denial indicates it would be effective for A.B.'s ABA therapy treatments for the next 6 months until October 27, 2020.

**ANSWER:**   HCSC admits that BCBSOK sent a letter to A.B. regarding a request for determination of benefits dated April 17, 2020, and refers the Court to that letter for its complete and accurate contents.   HCSC denies the remaining allegations contained in Paragraph 94.

95.     On April 22, 2020, the Therapy and Beyond therapist contacted Sherri Blaik to tell her that they were requesting an appeal of the decision. They simply stated that they expected this problem as it was the same one that they had last time. She confirmed that when Therapy and Beyond would not accept the suggested twenty-five (25) hours per week, BCBS had simply changed and stated that they were only going to authorize fifteen (15) hours per week without any appropriate review. She contended that BCBS did not state what clinical justification was missing, nor would they specify and request what it was they were looking for to approve any treatments for payment.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 95, and on that basis denies them.

96.     The medical providers explained to Sherri Blaik that this reduction in benefits without a peer review was highly unusual. Mr. and Mrs. Blaik, again, believed that BCBS's dealings with them were in the nature of retribution, and their therapist confirmed that her claims were not being handled in the manner in which they were accustomed to addressing ABA therapy with BCBS.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 96, and on that basis denies them.

97.    On April 24, 2020, Therapy and Beyond was finally able to get through with a BCBS representative regarding the partial denial of treatment hours. Therapy and Beyond was instructed that they would have to fill out an appeal form, again, a process which Therapy and Beyond had not seen or experienced in handling ABA considerations with BCBS in the past. The therapist advised Mrs. Blaik that the change from forty (40) hours to fifteen (15) hours as medically necessary was a huge discrepancy and that they had never seen any insurance company cut hours so drastically over six (6) months.

**ANSWER:**    HCSC admits that a representative from Therapy and Beyond contacted BCBSOK on April 23, 2020. HCSC lacks knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 97, and on that basis denies them.

98.    On April 30, 2020, the Blaik's advised BCBS through counsel that they would include in the litigation BCBS's new refusal to provide coverage as recommended by her ABA therapist. The Blaik's noted that BCBS believes that they are in charge of dictating how much care is appropriate for A.B., without appropriately even considering such treatment, and continues to pressure her providers into providing her less care. The Blaiks indicated that this conduct was already what the lawsuit was about, did not appear to really be any kind of a different claim, but that they may have to amend to formally add it at a later date. The letter indicates that the Blaik's and Therapy and Beyond would do whatever they can to facilitate appeal as required. We suggested that BCBS could avoid

litigation over this further denial altogether by simply just paying for the care that A.B.'s providers deemed medically necessary.

**ANSWER:**   HCSC admits that Mark Engel sent a letter to counsel for HCSC on April 30, 2020, and refers the Court to that letter for its complete and accurate contents. HCSC denies the remaining allegations contained in Paragraph 98.

99.    On April 30, 2020, Sherri Blaik began working with Therapy and Beyond for private pay arrangements to keep A.B.'s therapy continued as recommended by her medical providers.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 99, and on that basis denies them.

100.    On April 30, 2020, Therapy and Beyond participated in an external review with a doctor believing that they were scheduled to participate in the typical peer review. Therapy and Beyond had never received a response until that day, and they were told that the peer review had to happen that day, or it was too late. They had to quickly put a team together of providers that had worked with A.B. in order to present the evidence appropriate for such a peer review. Typically, this peer review is done with the therapist to explain and review the plan of care. Then, if Therapy and Beyond is not satisfied with the results, it gets advanced to an external review. External reviews are rare. When they got on the call arranged that same day, the claim had gone directly to an external review without any notification. Again, the therapist had never seen a claim handled in this fashion. The external reviewer would only allow one person to talk about A.B.'s care, and all of the

other therapists were not allowed to speak. The external reviewer kept alleging that A.B. was not making enough progress when they had not even reviewed all of her progress reports. The therapist described the significant progress that was documented and the specific number of goals and percentage increase and the different ABA-tasked treatments which demonstrate considerable progress. The therapist indicated that the reviewer would not even allow her to go through the reports and explain the full progress documented in those reports. The external review doctor was talking about the need for documentation different than what BCBS had requested of them. Finally, the reviewer indicated that he had reviewed many cases before like A.B.'s which surprised the therapist. The Therapy and Beyond therapist asked how many HCC cases he had seen in the past, because the diagnosis is rare. The external reviewer stated that he thought A.B. had autism. He was wrong. He had not even reviewed her file enough to know her medical diagnosis. He was already set to confirm BCBS's denial of any ABA therapy over 15 hours based upon a lack of information that had never been requested and based upon a review and determination he had made based upon an absent autism diagnosis. He denied all of A.B.'s additional hours, approving only fifteen (15) hours when he had not even reviewed her information enough to know the condition which her treatment was rendered to address. The reviewer just got more defensive and would not listen when he was confronted with how unfamiliar he was with A.B.'s actual diagnosis and of the course of treatment for which he was denying coverage. He realized that he did not even know what condition A.B. was being treated for with the ABA therapy for which he was evaluating medical necessity.

**ANSWER:** HCSC admits that a representative from Therapy and Beyond participated in an external review on April 30, 2020, but denies the remaining allegations in Paragraph 100.

101.    There is an appeal denial dated April 28, 2020 confirming that the BCBS denial decision was because approval is required from a mental health advisor for the treatment of mental health and substance abuse conditions and that the benefit payment was denied because the mental health advisor was contacted and did not approve the treatment received. A.B. does not have any treatment of mental health or substance abuse conditions because she does not have a mental health or substance abuse condition or diagnosis. Her ABA therapy treatment was for a congenital neurological defect and is inappropriately reviewed. Similarly, BCBS's appeal denial states that Christina Thornton is an M.D. and A.B.'s medical doctor. Christina Thornton is a licensed BCBA that provides ABA therapy care and is not an M.D. The denial, like the external review, does not even evaluate this treatment based upon the proper condition of this patient.

**ANSWER:**  HCSC admits that BCBSOK sent a letter dated April 28, 2020 to Christina Thornton confirming that it was reviewing an appeal, and refers the Court to that letter for its complete and accurate contents. HCSC denies the remaining allegations contained in Paragraph 101.

102.    These new denials for the care for A.B. coincided with dramatic changes for A.B. due to the months of COVID-19. Her schedule changes, closing of her school and inability to see familiar faces was particularly difficult for a child of her mental capacity.

Her anxiety, sleeping and overall condition was very difficult in this timeframe. As her parents moved to make arrangements for private pay, there were differences in the available therapists and a further change in the regular intensive treatment that she was receiving in terms of who was administering the care. These changes in routine, in combination with those imposed by the COVID changes, had an extreme effect on A.B. The claim denials affected the persons she was accustomed to working with in ABA therapy. She bit at her fingernails until they bled. Her demonstrated difficulty and acting out led to some of her regular ABA therapists doubling their efforts to spend additional time to get her back on track. On May 8, 2020, the Blaik's received the final denial letter from the external review physician who maintained his predetermination for denial even though, in his review, he had not even looked at it close enough to understand A.B.'s diagnosis that was being treated.

**ANSWER:**   HCSC lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 102, and on that basis denies them.

103.   All three (3) Plaintiffs, Will Blaik, Sherri Blaik and A.B. bring a cause of action for breach of their insurance policy that they contracted with BCBS to provide appropriate indemnity health insurance coverage. The Plaintiffs contend that the breaches of contract known to them at this time include, but are not limited to, failure to make a determination or payment of a claim within thirty (30) days as provided in the policy and presented to BCBS at the time of their refusal to pay, failure to comply with many state laws imputed into the policy contract by the terms of the contract state statute provision,

including statutes for the prompt payment of health insurance claims, requirements for response to written complaints within thirty (30) days, requirements that denials of coverage specify in writing the basis and policy provisions that support the denial, and the policy provisions that this Court has noted provide coverage for A.B.'s ABA therapy treatment. As detailed above, this claim for breach of contract involves all of A.B.'s ABA therapy claims submitted by Therapy and Beyond that were all refused any appropriate consideration and prompt payment, even those that were later paid on October 21, 2019, for BCBS's refusal to pay for these necessary medical expenses as they are obligated to do by the policy. This cause of action also involves all of the improperly denied claims in the EOBs listed above that were all improperly denied coverage as medically necessary ABA treatment from A.B.'s therapists at Therapy and Beyond. This cause of action also addresses BCBS's refusal to authorize and cover any ABA therapy treatment for A.B. over 15 hours per week beginning in April 2020 and going forward since that date.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 103 related to Will and Sherri Blaik. To the extent a response to these allegations is required, HCSC denies them. HCSC denies the remaining allegations in Paragraph 103.

104.   All three (3) Plaintiffs, Will Blaik, Sherri Blaik and A.B., bring a cause of action against BCBS for breach of the implied covenant of good faith and fair dealing imposed in their contract with these insureds based upon the conduct described herein for

all of these ABA claims that were never addressed, paid or denied until October 21, 2019.

Plaintiffs state that delay alone can support this cause of action for bad faith because it

deprives the insured of the precise peace of mind for which this insurance was purchased.

Plaintiffs contend that all the conduct described above, especially taken as a whole,

establishes that these Defendant's conduct was in breach of the implied covenant of good

faith and fair dealing. Again, Plaintiffs submit that the precise conduct of the Defendant

during this six (6) months is principally unknown to the Plaintiffs, other than it is detailed

above, based upon the Defendant's own refusal to properly and fairly and decently

communicate with them with regard to their pending ABA claims. Even the claims that

were finally paid and denied in October 2019, were all unreasonably delayed without any

justifiable basis for the same. BCBS's refusal to respond to the Plaintiffs on these claims

was with knowledge that it could effect the decisions for treatment of the child, with the

intent that it would coerce recommendations from her providers for a lower standard of

care and to coerce decisions to reduce A.B.'s care. Plaintiffs further contend that the

continued denials of A.B.'s ABA therapy claims after the initial filing of this lawsuit were

improper without any adequate explanation for the insurance companies actions in

connection with the same and that the refusal to authorize and pay for any ABA therapy

over 15 hours a week going forward since April 2020 is improper.

**ANSWER:**   Because the Court dismissed the "claims asserted by Plaintiffs Will

Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to

the allegations in Paragraph 104 related to Will and Sherri Blaik. To the extent a response

to these allegations is required, HCSC denies them. HCSC denies the remaining allegations in Paragraph 104.

105. Plaintiffs met all conditions precedent by payment of the appropriate premiums and submission of these ABA therapy bills to BCBS for appropriate and prompt payment.

**ANSWER:** HCSC denies the allegations in Paragraph 105.

106. As a direct result of BCBS's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiffs, Mr. and Mrs. Blaik, have suffered loss of policy's indemnity benefits for A.B.'s ABA medical care, loss of appropriate authorization and coverage for A.B.'s ABA therapy going forward, physical and emotional injury, emotional distress, embarrassment, frustration, duress, and other consequential damages.

**ANSWER:** Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to respond to the allegations in Paragraph 106. To the extent a response is required, HCSC denies the allegations in Paragraph 106.

107. As a direct result of BCBS's breach of contract and breach of the implied covenant of good faith and fair dealing, Plaintiff, A.B., has suffered the loss of her policy benefits, the denial of appropriate authorization for the ABA medical care that has been determined to be appropriate and necessary for her best medical care, bodily injury,

emotional injury, distress, worry and alternations in her medical care that have negatively impacted A.B.

**ANSWER:**   HCSC denies the allegations in Paragraph 107.

108.   BCBS's acts and omissions in violation of the implied covenant of good faith and fair dealing were in reckless disregard for the rights of others and/or were done intentionally and with malice and, therefore, Plaintiffs are entitled to recover punitive damages.

**ANSWER:**   HCSC denies the allegations in Paragraph 108.

## AFFIRMATIVE DEFENSES

HCSC asserts the following affirmative defenses. By asserting these defenses, HCSC does not in any way agree or concede that Plaintiff properly stated any cause of action in the Second Amended Complaint or that HCSC has the burden of proof or persuasion with respect to any of its defenses. Because the Court dismissed the "claims asserted by Plaintiffs Will Blaik and Sherri Blaik for themselves individually," HCSC has no obligation to plead affirmative defenses to the claims brought by Will and Sherri Blaik individually.

HCSC reserves the right to supplement or delete any or all of the following defenses, as warranted by further investigation, discovery, or litigation in this action, and reserves the right to amend this Answer and these defenses to assert any and all additional defenses.

1.     The Second Amended Complaint fails to state claims upon which relief can be granted for breach of contract, bad faith, or for punitive damages, and fails to allege any damages that would support a claim of bad faith.

2.     A.B.'s claims are barred in whole or in part to the extent they are inconsistent with the express terms and conditions set forth in A.B.'s insurance policy and the amendments thereto.

3.     A.B.'s claims are barred by the terms and conditions of the applicable healthcare policy because the claims at issue involve medical services that are not covered services, or are excluded from coverage.

4.     Although HCSC contends that A.B.'s claims are not payable, if and to the extent they may be payable, there was and is a legitimate dispute as to the claim and therefore no bad faith claim may be asserted.

5.     A.B.'s claims are barred in whole or in part by any limitations period contained in A.B.'s insurance contract.

6.     A.B.s claims are barred in whole or in part because A.B. failed to satisfy conditions precedent under the insurance policy.

7.     A.B.'s claims are barred for failure to exhaust contractual review and appeals processes under the applicable healthcare policy, as well as other statutory, nonjudicial processes and remedies prior to filing this lawsuit.

8.     A.B.'s claims are barred in whole or in part by A.B.'s failure to mitigate her alleged damages, if any.

9.     A.B.'s claims are barred in whole or in part because any loss that A.B. alleges was not caused by the fault or wrongdoing of HCSC or persons and entities over which HCSC had responsibility or control.

10.    A.B. is barred under Oklahoma law from seeking punitive damages in relation to the breach of contract claim. *Warrenfeltz v. Hogan Assessment Systems, Inc*., No. 17-CV-428-GKF-FHM, 2018 WL 2324990, at *1 (N.D. Okla. Mar. 29, 2018) (explaining that Oklahoma law limits punitive damages to "actions for the breach of an obligation not arising from contract.") (cleaned up).

11.    If and to the extent A.B. seeks punitive damages in relation to her bad faith claim, such damages are barred by the provisions of Okla. Stat. tit. 23, § 9.1, which limit punitive damages to circumstances not applicable here.

12.    A.B.'s allegations are barred by the parole evidence rule, statute of frauds, and/or the clear terms of the policy.

13.    A.B. assumed the financial risk of undergoing the services.

14.    For further answer and affirmative defense, HCSC states that A.B.'s claims for punitive damages should be stricken for the following grounds:

(a)    Consideration of any punitive damages in this civil action would violate the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and the Oklahoma Constitution, in that:

1.    Consideration of punitive damages in this action would allow standardless discretion to the jury to determine punishment, depriving HCSC of prior notice of the consequences of its alleged actions.

2.     The admission of any evidence directly to the jury concerning HCSC's assets or net worth will create an undue risk of an improper verdict on each issue concerning liability, the measure of compensatory damages, whether to award punitive damages, and the measure of punitive damages.

3.     Punitive damages by their very nature constitute punishment and are a quasi-criminal sanction for which the burden of proof should not be less than "beyond a reasonable doubt"—not merely "clear and convincing evidence" or a "preponderance of the evidence."

(b)     An award of punitive damages, if allowed, would violate the Excessive Fines Clause of the Eighth Amendment of the United States Constitution and the Oklahoma Constitution in that punitive damages would constitute an excessive fine upon HCSC.

(c)     Punitive damages are punishment, a quasi-criminal sanction, for which HCSC is not afforded the specific procedural safeguards prescribed by the Fourth, Fifth and Sixth Amendments of the United States Constitution and the Oklahoma Constitution.

15.     An award of punitive or exemplary damages against HCSC is barred to the extent that it is inconsistent with the standards and limitations set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) and *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408 (2003).

**WHEREFORE**, HCSC requests that judgment be entered in its favor and against Plaintiff, and that HCSC be awarded costs, attorneys' fees, and any other appropriate relief.

Dated:  December 1, 2021                    Respectfully submitted,

                                            _/s/_ Samuel R. Fulkerson_____
                                            Samuel R. Fulkerson, OBA #14370
                                            Lori F. Winland, OBA #32159
                                            OGLETREE, DEAKINS, NASH, SMOAK &
                                            STEWART, P.C.
                                            621 North Robinson Avenue, Suite 400
                                            Oklahoma City, OK 73102
                                            Telephone: (405) 546-3759
                                            Facsimile: (405) 546-3775
                                            sam.fulkerson@ogletree.com
                                            lori.winland@ogletree.com

                                            Brian P. Kavanaugh (*admitted pro hac vice*)
                                            Kathleen L. Carlson (*admitted pro hac vice*)
                                            Benjamin I. Friedman (*admitted pro hac vice*)
                                            SIDLEY AUSTIN LLP
                                            One South Dearborn
                                            Chicago, IL 60603
                                            Telephone: (312) 853-7617
                                            Facsimile: (312) 853-7036
                                            bkavanaugh@sidley.com
                                            kathleen.carlson@sidley.com
                                            benjamin.friedman@sidley.com

                                            ***Attorneys for Defendant Health Care
                                            Service Corporation, a Mutual Legal
                                            Reserve
                                            Company***

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on December 1, 2021 a true and correct copy of the foregoing was forwarded via ECF notification, to the following:

Mark A. Engel
MANSELL ENGEL & COLE
204 N. Robinson Ave., 21st Floor
Oklahoma City, OK 73102
mengel@meclaw.net
***Attorney for Plaintiffs***

/s/ Samuel R. Fulkerson
Samuel R. Fulkerson